# United States Court of Appeals
## For the First Circuit

Nos. 12-1051, 12-1350

MICHAEL FRANCIS MURRAY,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin[*] and Stahl, Circuit Judges.

Rosemary Curran Scapicchio, with whom Dennis M. Toomey was on brief, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

---

[*] Judge Boudin heard oral argument in this matter, and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

January 4, 2013

**LYNCH**, **Chief Judge**.  This appeal is from the district court's denial of a petition filed by a federal prisoner, Michael Murray, for the extraordinary writ of coram nobis.  Murray v. United States, 821 F. Supp. 2d 458 (D. Mass. 2011).  We affirm the denial of the writ.

I.

This story starts a long time ago.

In 1983, Murray and six other defendants were charged with conspiracy to possess and possession with intent to distribute over a thousand pounds of marijuana; in 1984, Murray was convicted on one count of conspiracy.[1]  United States v. Moscatiello, 771 F.2d 589, 591-92 (1st Cir. 1985), vacated by Murray v. United States, 476 U.S. 1138 (1986) (mem.).  Agents from the Federal Bureau of Investigation (FBI) and the Drug Enforcement Agency (DEA) had seized the drugs from two vehicles, a garage in Dorchester, and a warehouse in South Boston.  Id. at 591.  The seizures followed a nearly year-long investigation in which the agents had gathered information from multiple informants and conducted extensive surveillance of various members of the suspected conspiracy.  See Murray, 821 F. Supp. 2d at 462-63.

---

[1] Two of Murray's codefendants pled guilty, another was convicted after trial, and a fourth was acquitted.  See United States v. Moscatiello, 771 F.2d 589, 591-92 (1st Cir. 1985), vacated by Murray v. United States, 476 U.S. 1138 (1986) (mem.). A fifth was murdered before the charges were resolved.  The record is unclear as to what happened to the sixth codefendant.

The investigation bore fruit on April 5 and 6, 1983, when the agents observed a suspicious pattern of activity involving a number of the suspects driving to various locations in Boston and switching vehicles amongst each other. Id. at 463-64. It was during this surveillance that one agent, Cleary, asserted he had accidentally happened upon the South Boston warehouse and had seen one of the vehicles under surveillance parked outside. Id. at 464. On the afternoon of April 6, 1983, the agents observed Murray and another suspect get into a white van and a green camper, respectively, which then drove into the South Boston warehouse. Id. A short time later, Murray drove the white van out of the warehouse, stopped in a nearby parking lot, and handed off the van and its keys to another driver. Id. When the agents pulled that driver over shortly thereafter, they found sixty bales of marijuana in the van. Id. at 464-65. The other suspect followed the same procedure with the green camper, and the agents also stopped that vehicle and found bales of marijuana inside. Id.

After finding the marijuana in both vehicles, the agents returned to the warehouse. They entered without a warrant and observed additional bales of marijuana in plain view. Id. at 465. The agents then secured the warehouse, kept it under surveillance, and applied for a warrant to search it, without mentioning in the warrant affidavit that they had already conducted a warrantless entry. Id. at 465-66.

-4-

Murray and the other defendants filed motions to suppress the marijuana seized during the vehicle and warehouse searches. See Moscatiello, 771 F.2d at 595. Murray, in particular, sought suppression of the drugs from the warehouse based on the agents' warrantless search. Id. at 600-01. The trial judge, after a ten-day evidentiary hearing at which three FBI agents and one DEA agent testified, denied the motions. See id. at 591. As relevant here, the court determined that the warrant affidavit for the search of the warehouse was supported by probable cause regardless of the information from the warrantless entry, because the affidavit had rested on direct observation by law enforcement, evidence of the marijuana seized from the vehicles, and information provided by three confidential informants (CIs). See id. at 596-97, 600.

Murray proceeded to trial following the denial of his suppression motion, and in 1984 a jury convicted him of one count of conspiracy to possess marijuana. Id. at 591-92. He was sentenced to four years' imprisonment. After various appeals from his conviction which resulted in remands,[2] Murray reached an

_____

[2] In Moscatiello, this court affirmed Murray's conviction against challenges based on the Speedy Trial Act and the denial of the motion to suppress. See 771 F.2d 589. That decision was summarily vacated and remanded for reconsideration of the Speedy Trial Act issue. See Murray, 476 U.S. 1138 (mem.). We again affirmed the conviction in United States v. Carter, 803 F.2d 20 (1st Cir. 1986). But then, in Murray v. United States, 487 U.S. 533 (1988), the Supreme Court took up the suppression issue, and it vacated this court's judgment. The Supreme Court remanded with instructions to remand to the district court for findings as to whether the agents would have sought the warrant independent of

agreement with the government[3] wherein he abandoned his suppression challenge and the government recommended that his sentence be reduced to eighteen months' imprisonment, which at that point amounted to time served. Murray, 821 F. Supp. 2d at 462.

Over two decades later, in 2007, Murray filed this petition for a writ of error coram nobis, attacking the denial of the suppression motion in the 1984 case based on newly available evidence that one of the CIs relied upon in the warrant application was James "Whitey" Bulger and that FBI agents had originally learned of the warehouse filled with marijuana from Bulger, not from the circumstances that Agent Cleary claimed. Murray's theory was that, if the FBI had disclosed Bulger's name and the fact that he was both cooperating with and benefitting from the FBI, such information would have materially affected the outcome of the suppression hearing and also would have discredited all of the agents' testimony at trial, which in turn would have materially

_____

their earlier unauthorized entry into the warehouse. Id. at 543-44. Murray negotiated an agreement with the government after this remand, see note 3 below, negating the need for a decision on the "independent source" question. That issue is not before us.

[3] Neither side has provided us with a description of exactly what transpired after the Supreme Court's final remand. The remand order did not vacate Murray's conviction, but rather vacated this court's judgment in the appeal and ordered the appellate court to remand to the district court for additional findings relating to the warrant. It appears that, after remand to the district court, Murray reached some type of compromise agreement with the government and did not continue to pursue his appeal, although the agreement perhaps cannot be termed a "guilty plea" per se because his original jury conviction still stood.

affected whether he would have been originally convicted or his decision to stop pursuing his appeal and accept imprisonment. He argues that the agents who testified at the suppression hearing were lying at that hearing in order to protect from disclosure the FBI's illicit relationship with Bulger.[4]

The 1984 conviction matters even though Murray has long since been released from imprisonment for that crime. It matters because that conviction operated to increase the sentence Murray received as a result of his next criminal conviction for marijuana distribution, which arose out of trafficking activities in 1989 and 1991. See United States v. Catano, 65 F.3d 219, 221-23 (1st Cir. 1995). At his sentencing proceeding for that later conviction, in 1994, Murray's criminal history score was calculated as six points, which included three points for the 1984 conviction. The combination of his criminal history score and his offense level produced a guidelines range of 292 to 365 months, with a mandatory

---

[4] That relationship has been discussed in numerous cases from this circuit. See, e.g., Davis v. United States, 670 F.3d 48, 50 & n.1 (1st Cir. 2012); McIntyre ex rel. Estate of McIntyre v. United States, 545 F.3d 27 (1st Cir. 2008); United States v. Connolly, 341 F.3d 16 (1st Cir. 2003); United States v. Flemmi, 225 F.3d 78 (1st Cir. 2000).

minimum of 20 years.[5]  The district court sentenced Murray to thirty years' imprisonment.  Murray, 821 F. Supp. 2d at 461.

Murray has now served more than eighteen years of that sentence.  Through this application for a writ of coram nobis, he hopes to secure his immediate release.

II.

A.  Nature and Availability of the Writ

Coram nobis is an ancient writ that was originally intended to allow courts to correct technical errors in their past judgments.  Its present, limited use in the American legal system is to correct "fundamental errors of fact or law."  United States v. George, 676 F.3d 249, 253 (1st Cir. 2012).  The Federal Rules of Civil Procedure abolished the use of the writ in civil cases, see Fed. R. Civ. P. 60(e), but it has survived for use in criminal cases.  The Supreme Court has held that, under the All Writs Act, 28 U.S.C. § 1651, federal courts are authorized to issue writs of error coram nobis to correct criminal judgments, and that the

_____

[5] During the course of the coram nobis proceedings, the district court held a hearing at which it attempted to determine how Murray would be sentenced today if his 1984 offense were not included in the guideline calculations, in order to determine whether the inclusion of that offense had prejudiced Murray for purposes of the coram nobis analysis.  The court concluded that Murray's criminal history category would be reduced by two levels and thus that his guidelines range would be 235 to 293 months, i.e., a maximum of about 24.4 years.  We do not pass judgment on whether this was the correct approach for the district court to take; we simply note it for an indication that the 1984 conviction affected Murray's 1994 sentence.

-8-

enactment of 28 U.S.C. § 2255 did not eliminate the availability of coram nobis relief. See United States v. Morgan, 346 U.S. 502, 503-04, 506-13 (1954) (holding petitioner entitled to bring action seeking writ of coram nobis to show constitutional error in prior federal conviction, which caused him to receive longer sentence as a second offender in later state criminal case).

However, coram nobis is an extraordinary remedy, which is available "only under circumstances compelling such action to achieve justice." Id. at 511. It is meant to correct errors "of the most fundamental character; that is, such as render[] the proceeding itself irregular and invalid." United States v. Mayer, 235 U.S. 55, 69 (1914). As an extraordinary remedy, coram nobis may not issue when other remedies, including habeas corpus, are available. United States v. Denedo, 556 U.S. 904, 911 (2009). The Supreme Court has noted that, given other statutes and rules of criminal procedure, "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate." Carlisle v. United States, 517 U.S. 416, 429 (1996) (alteration in original) (quoting United States v. Smith, 331 U.S. 469, 475 n.4 (1947)) (internal quotation marks omitted). This court has described coram nobis as the "remedy of last resort." George, 676 F.3d at 253.

This case does not involve the more common situation of a petitioner seeking coram nobis relief on an argument that,

pursuant to a Supreme Court decision that post-dates his conviction, the conduct for which he was convicted is no longer criminal. See, e.g., id. at 252; United States v. Sawyer, 239 F.3d 31, 34 (1st Cir. 2001); DeCecco v. United States, 485 F.2d 372, 373 (1st Cir. 1973). Nor is there any claim that Murray is actually innocent of the 1984 marijuana conspiracy charge. Still, this is not the first time that this circuit has dealt with a coram nobis petition claiming that the government failed to meet its disclosure obligations. See United States v. Barrett, 178 F.3d 34, 40, 54 (1st Cir. 1999) (claiming that government failed to disclose evidence under the Jencks Act).

B. Standards for Decision

A district court's order granting or denying a writ of error coram nobis is an appealable civil judgment. See Trenkler v. United States, 536 F.3d 85, 92-95 (1st Cir. 2008). In reviewing a district court's decision on a coram nobis petition, this court reviews the legal conclusions de novo and the findings of fact for clear error. George, 676 F.3d at 256. Where the district court declines to conduct an evidentiary hearing and denies the writ as a matter of law, "review . . . is plenary." Id. We engage in plenary review here.

The Supreme Court has not yet addressed the precise standards that lower courts should use in deciding whether to issue writs of error coram nobis; it has simply emphasized the importance

of restraint in issuing them.  See id. at 253-54 (citing Denedo, 556 U.S. at 911; Carlisle, 517 U.S. at 429).

This circuit has adopted a three-part test to determine whether a petitioner is eligible for coram nobis relief, along with a fourth part that addresses whether relief should actually be granted.  To establish eligibility, the petitioner must first adequately explain his failure to seek relief earlier through other means; second, he must show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate this consequence;[6] and third, he must demonstrate that the judgment resulted from a fundamental error.  Id. at 254, 256 n.3.  The petitioner bears the burden of persuasion on all three steps.  Id. at 255.

The standard for determining whether an error is fundamental is not precisely defined, but because coram nobis "lies at the far end of [the] continuum" of methods for challenging a judgment, id. at 258, it is a high standard.  See id. (noting that

_____

[6] The circuits disagree as to whether the "stain of conviction" is, by itself, sufficient to show a continuing collateral consequence.  See George, 676 F.3d at 254 (citing cases).  This circuit has held that more than the mere fact of conviction is needed to satisfy this element of the test, although we have not described precisely which kinds of consequences qualify.  Id. at 255-56 & nn.2-3.  For the purposes of this case, however, we need not elaborate, since the Supreme Court has indicated that an enhanced sentence is properly considered as a collateral consequence in a coram nobis inquiry.  See Morgan, 346 U.S. at 512-13.

the burden on a defendant increases at each stage of review, from direct review to first habeas petition to second habeas petition -- and then, presumably, to coram nobis).

Even if the petitioner meets all three of the conditions in the coram nobis eligibility test, the court retains discretion to grant or deny the writ, depending on the facts and circumstances of the individual case.[7] Id. at 255. Satisfying the three-part test "is a necessary, but not a sufficient, condition for the issuance of the writ." Id.

For the purposes of all the claims of error made in this petition, we will use the materiality standard of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. As the Supreme Court emphasized in Smith v. Cain, 132 S. Ct. 627 (2012), under Brady, the withheld information must be material; evidence is material "when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." Id. at 630 (quoting Cone v. Bell, 556 U.S. 449, 470 (2009)) (internal quotation mark omitted). Importantly, a reasonable probability does not mean the defendant "would more

---

[7] For example, in George, this court exercised its discretion to deny the writ -- assuming arguendo that petitioner had satisfied the three-part test -- where petitioner had waived indictment, pled guilty, and declined to take a direct appeal or petition for habeas review, then alleged in his coram nobis petition that the record was insufficient to show that he had violated the relevant statute under a later-issued Supreme Court decision clarifying the definition of the crime at issue. See 676 F.3d at 258.

likely than not have received a different verdict with the evidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). It means only that suppression of the evidence must have "undermine[d] confidence in the outcome of the trial."[8] Id. (quoting United States v. Bagley, 473 U.S. 667, 678 (1985)) (internal quotation marks omitted).

Of course, a showing that material evidence was withheld in a criminal proceeding would not alone be enough to establish that there was a fundamental error in the conviction, given the extraordinary nature of the writ of coram nobis. Like the three-part eligibility test, materiality is a necessary but not a sufficient condition for sustaining a petition for coram nobis on a nondisclosure theory. An error regarding evidence that was not material necessarily fails to be fundamental; an error implicating material evidence might, but does not necessarily, qualify as fundamental. That depends on the particular facts of the case -- for instance, if the withheld evidence supported a colorable claim of actual innocence. No such claim is made here.

---

[8] The parties agree that in one portion of the district court's opinion, it articulated the incorrect standard. The district court analyzed the materiality of the allegedly false testimony by asking whether there was a reasonable likelihood that Murray would have been acquitted had its alleged falsity been revealed, rather than whether there was a reasonable likelihood that the testimony could have affected the judgment of the jury. See Murray, 821 F. Supp. 2d at 470-71. This misstatement does not affect the outcome of this appeal.

-13-

C. Application of Standards to Facts

      The district court captured Murray's essential theory:

> He alleges that, contrary to the statements and testimony of the federal agents, the FBI had prior knowledge of the location of the Warehouse because of information provided by Bulger. He claims that to avoid disclosing that Bulger was acting as an informant, the agents lied in the warrant affidavit, perjured themselves at the motion hearing and trial, and failed to disclose to him exculpatory information about the source of the information. This misconduct, Murray claims, caused violations of his Fourth, Fifth, and Sixth Amendment rights, rendering the proceedings leading to his 1984 conviction fundamentally flawed and necessitating the issuance of a writ of coram nobis.

Murray, 821 F. Supp. 2d at 466 (citations omitted).

      Murray argues that these "lies" were material to the motion to suppress as well as to the agents' testimony at trial. He asserts he was denied a fair trial and should be released, or at least granted resentencing.

      As to his petition, we make certain assumptions in Murray's favor. First, we will assume that his assertions about Bulger and the FBI were timely and could not have been reasonably made before the time he brought his petition.[9] We next assume in Murray's favor that this petition is not an attempt to evade the

---

[9] Murray relies on information from a 2006 civil trial in the District of Massachusetts, which concerned the FBI's relationship with Bulger. See McIntyre v. United States, 447 F. Supp. 2d 54 (D. Mass. 2006). The district judge in that case found that Bulger had provided the FBI with the location of the South Boston warehouse as retaliation against a criminal competitor. Id. at 94.

restrictions on federal post-conviction relief under 28 U.S.C. § 2255. See Trenkler, 536 F.3d at 95-100; Barrett, 178 F.3d at 54-57. We also assume Murray may apply for the writ despite the fact that he is still in custody, because of the considerations outlined in Morgan. See 346 U.S. at 512-13 ("Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties . . . .").

The district court, too, made a number of assumptions in favor of Murray. Most particularly, the court credited Murray with having made a "substantial preliminary showing" that Agent Cleary did have prior knowledge of the location of the warehouse and lied about how he came to know of it. Murray, 821 F. Supp. 2d at 468 (quoting Franks v. Delaware, 438 U.S. 154, 155 (1978)) (internal quotation marks omitted). For purposes of this appeal only, we will assume so arguendo, although the evidence for the assumption is weak.

These various assumptions would establish the first two prongs of the coram nobis test in Murray's favor, and so we turn to the third. On the question of whether Murray's 1984 conviction rested on a fundamental error, we conclude that it did not. Further, on the fourth element of the coram nobis inquiry, we conclude the writ should not issue.

The district court likewise determined that Murray had not demonstrated fundamental error relating to the issuance of the

-15-

search warrant, the agents' trial testimony, or the government's Brady disclosures. Id. at 468-74. We need not repeat the many grounds of the district court's analysis, but limit ourselves to a few.

First, we conclude, as did the district court, that the omitted and allegedly false statements in the affidavit in support of the warrant were not material to the issuance of the warrant. There was ample probable cause to search the warehouse and no basis to suppress. As the district court pointed out, the warrant was supported by information from two other CIs who were not Bulger and who offered more detailed information about a large-scale marijuana conspiracy. Id. at 469. There was no basis for any insinuation that the CIs fabricated this information. Id. at 468-69. Further, the warrant affidavit included eyewitness observations by multiple agents about the unusual behavior of individuals and vehicles on April 5 and 6, 1983, which eventually led to the agents observing two vehicles leaving the warehouse and discovering that those vehicles contained bales of marijuana. Id. at 463-65. The surveillance combined with the marijuana in the vehicles gave the agents probable cause to believe that the warehouse contained additional marijuana and evidence of trafficking. See id. at 466.

From these facts, the district court concluded that even if Bulger had been identified as the third CI (and thus the information linked to him been rendered unreliable), and even if

-16-

Agent Cleary's purportedly false story about discovering the warehouse had been omitted, the remainder of the affidavit readily established probable cause.  Id. at 468-70.  We agree.  And because the allegedly withheld information was not material, it cannot be the basis for a finding of fundamental error.

In a variant on his core argument, Murray argues that had Bulger's identity and relationship with the FBI been disclosed, he would have had more ammunition to cross-examine the federal agents at trial.  Even if we assume this to be so, this line of argument ignores the fact that other evidence strongly pointed to Murray's guilt.  A blue van registered to Murray had appeared multiple times in the course of the federal agents' surveillance of the suspected conspirators.  Id. at 463.  The agents had observed Murray driving a white van out of the warehouse; they had seen him stopping the van and handing the keys to another suspect; and when the agents pulled the white van over shortly thereafter, they found that it contained sixty bales of marijuana.  Id. at 464-65.  The warehouse itself was filled with more marijuana.  Id. at 465.  There was strong and direct evidence of Murray's guilt, unaffected by the claimed new ability to impeach.[10]

_____

[10] The same conclusion applies to Murray's argument that certain withheld documents would have helped him to impeach government witnesses because those documents did not list him as a member of "the Joe Murray crew" (the criminal group under investigation for marijuana trafficking).  First, it appears that Murray did not raise this argument in the district court until after the court had entered its order denying the petition.  But

We see no basis for impugning the original verdict of guilt in light of that evidence. The issue of whether or not the FBI agents were untruthful regarding how they first learned of the warehouse, and regarding Bulger's role in providing that knowledge, does not undermine confidence in the conviction.

The fact remains that Murray did eventually accept a reduced sentence for the 1984 conviction rather than pressing his case after remand from the Supreme Court. There is, and can be, no serious argument that Murray's post-remand agreement was not knowing or voluntary. As we pointed out in United States v. George, 676 F.3d 249, those who have pled guilty are subject to higher standards for issuance of coram nobis. See id. at 256-57. Although Murray's agreement may or may not be rightly characterized as a "guilty plea" as such, see note 3 above, it shares the characteristics of such a plea that are relevant to the coram nobis inquiry, including the abandonment of claims he could have raised on appeal and implication of the interests of finality. See George, 676 F.3d at 256-57.

---

even if we do not treat the argument as waived, the evidence to which Murray refers was not material under Brady. The documents, which contain notes about information Bulger provided to the FBI, do not purport to include complete lists of all members of the Joe Murray crew. In fact, at one point the notes specifically state that the named crew members are "[a]mong others." At no point do the documents indicate that Michael Murray was not a member of the Joe Murray crew, as Murray now claims in his briefing. Again, given the overwhelming evidence of Murray's guilt, these documents would not have been material to Murray's conviction.

-18-

In the end, Murray's petition for coram nobis is based on the thoroughly improbable theory that the FBI agents lied about everything in Murray's case, not just about how they knew the location of the warehouse, and that despite the other bases for the warrant affidavit, and all of the direct evidence of Murray's guilt, those lies were material. Like the district court, we note that this is sheer speculation, see Murray, 821 F. Supp. 2d at 472-74, and is certainly not enough to support issuance of the writ of coram nobis.

Even if there were trial errors, and we do not suggest there were, Murray's case would fail under the fourth element of the coram nobis inquiry. Issuance of the writ would not be warranted under the facts and circumstances of this case. See George, 676 F.3d at 255. Indeed, the interests of justice are best served by denial of the petition. It was entirely appropriate that Murray's sentence for his current conviction take into account a previous crime he committed.

In rejecting this petition, we in no way excuse or condone the FBI's illicit involvement with Whitey Bulger. See generally United States v. Connolly, 341 F.3d 16 (1st Cir. 2003) (affirming racketeering conviction of FBI agent who conspired with Bulger). But the connection to Murray's 1984 conviction, for a crime he did commit, is too attenuated to support his petition.

Affirmed.