# United States Court of Appeals
## For the First Circuit

No. 16-2147

SUNDAY WILLIAMS,

Petitioner, Appellant,

v.

UNITED STATES,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Lynch, Baldock,[*] and Kayatta
Circuit Judges.

Simone Bertollini, with whom Law Offices of Simone Bertollini was on brief, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Emily Gray Rice, United States Attorney, was on brief, for appellee.

June 8,, 2017

---

[*] Of the Tenth Circuit, sitting by designation.

**BALDOCK, Circuit Judge**.  A little over sixteen years ago, Petitioner Sunday Williams, a Nigerian citizen by birth, attempted to secure his United States citizenship. Unfortunately, the way he did so was less than ideal:  in lieu of utilizing any legal means at his disposal, he instead submitted a false application for a United States passport wherein he claimed that he was an American citizen hailing from Brooklyn.  Federal authorities caught him in the act and eventually charged him with making a material false statement in a matter within the jurisdiction of the United States government in violation of 18 U.S.C. § 1001.  Petitioner pleaded guilty, and the district court sentenced him to three years' probation.

Now, nearly a decade after his probationary sentence ended, Petitioner seeks a writ of error coram nobis—"a remedy of last resort for the correction of fundamental errors of fact or law," United States v. George, 676 F.3d 249, 253 (1st Cir. 2012)—that vacates or, at the very least, allows him to revise the factual basis of his § 1001 conviction.  Such a writ obviously could not remedy the direct consequences of that conviction (i.e., his already-completed sentence).  Petitioner, however, hopes it could remedy the collateral consequences he still suffers to this day.  Specifically, because the underlying facts of his § 1001 guilty plea and conviction involved a false claim of United States citizenship, Petitioner is now

- 2 -

"ineligible to receive visas and ineligible to be admitted to the United States." See 8 U.S.C. § 1182(a)(6)(C)(ii). Further, no waiver or exception is available that could rescue him from that status. See id. Petitioner is therefore not only permanently barred from obtaining lawful permanent resident status, see id., but also subject to deportation at any moment, see id. § 1227(a)(3)(D). Vacating his conviction or revising its underlying factual basis would thus leave open the possibility that he could obtain a green card and remain in the United States.

So what is the supposed fundamental error that would justify granting Petitioner this "extraordinary" and "hen's-teeth rare" writ? George, 676 F.3d at 253-54. In Petitioner's opinion, it was the performance of his attorney, which he claims was constitutionally deficient under Sixth Amendment standards, during the proceedings for his long-since-passed conviction. See generally Strickland v. Washington, 466 U.S. 668 (1984). To be sure, such constitutionally deficient representation, if true, can function as the rock upon which a petitioner can build her coram nobis church. See United States v. Castro-Taveras, 841 F.3d 34, 36-37, 52-53 (1st Cir. 2016) (allowing a defendant to premise his coram nobis petition on a Sixth Amendment ineffective-assistance-of-counsel claim); Murray v. United States, 704 F.3d 23, 28 (1st Cir. 2013) (noting that writs of

- 3 -

coram nobis are "meant to correct errors 'of the most fundamental character; that is, such as render[ ] the proceeding itself irregular and invalid'" (alteration in original) (emphasis added) (quoting United States v. Mayer, 235 U.S. 55, 69 (1914))).

To demonstrate his attorney's allegedly deficient performance, Petitioner first points to his change-of-plea hearing from July 29, 2004. As is relevant here, when Petitioner walked into that hearing to plead guilty, he had not yet been charged under § 1001; instead, he had been charged under 18 U.S.C. § 1542 with the crime of passport fraud. And in fact, Petitioner had filed motions to dismiss the passport fraud indictment for improper venue and to transfer the case to the Eastern District of New York, where Petitioner had actually made his false citizenship claims and where he lived at the time, from the District of New Hampshire, where his passport application had been processed and where the indictment was currently pending. The district court had initially denied both motions but changed course at the hearing after recognizing that our then-recent decision in United States v. Salinas, 373 F.3d 161 (1st Cir. 2004), mandated that venue did, in fact, lay in the Eastern District of New York. And in light of that recognition, the district court asked Petitioner whether he

wished to waive venue and proceed with his guilty plea in the District of New Hampshire.

After speaking with Petitioner, Petitioner's counsel replied that Petitioner no longer wished to "go through with this proceeding today" and wanted the case to be dismissed. In response, however, the prosecutor requested that the district court delay dismissing the case so that the United States could file a superseding indictment instead charging Defendant with making a material false statement in violation of § 1001. In the government's view, this course of action was the most practical and expeditious route, for venue over a § 1001 indictment would still lay in the District of New Hampshire. Id. at 166–67.

Petitioner's counsel agreed with the government's new, alternative suggestion. Without consulting anew with Petitioner to see whether he wanted to proceed with the government's suggested course of action or still hoped to have the case dismissed, counsel stated that

> [t]ime is important for [Petitioner] regarding immigration, what's going to happen with that, so I suppose we don't have an objection to a superseding indictment.

Petitioner's counsel also observed that a superseding indictment would "avoid [Petitioner] being re-arrested."

- 5 -

Although Petitioner went along with his counsel's conduct at the time and, as we noted above, eventually pleaded guilty to the § 1001 charge, Petitioner now claims that his "[c]ounsel sua sponte changed [his] plea by agreeing to allow the government to file a superseding indictment—instead of having the charge dismissed—without asking [him] or explaining what that meant." Because a defendant is guaranteed effective assistance of counsel during the "plea process," Hill v. Lockhart, 474 U.S. 52, 57 (1985), Petitioner argues that such an action clearly amounts to unreasonable conduct under the Sixth Amendment.

But Petitioner does not stop there. He also claims on appeal that his counsel both "fail[ed] to advise" and "affirmatively misadvised" him of the immigration consequences of pleading guilty to (initially) committing passport fraud under § 1542 and (eventually) making false statements under § 1001. And since the Supreme Court held in Padilla v. Kentucky, 559 U.S. 356 (2010), that the Sixth Amendment's guarantee of effective assistance of counsel requires an attorney for a criminal defendant to "inform her client whether his [guilty] plea carries a risk of deportation," id. at 374, Petitioner thus claims that his counsel's misadvice and lack of advice necessarily made his representation constitutionally inadequate.

- 6 -

For example, Petitioner points to his counsel's statement during the July 29, 2004 change-of-plea hearing that "[t]ime is important for [Petitioner] regarding immigration." He contends that this statement was affirmative misadvice about the immigration consequences of pleading guilty because "[h]ow the passage of time could positively or negatively affect [Petitioner's] immigration status is difficult to understand." Further, Petitioner averred under penalty of perjury that his counsel "repeatedly told [him] that this was a criminal case and that it had nothing to do with [his] immigration." And, of course, lingering in the background is his counsel's alleged omitted advice—i.e., that he and his counsel "did not discuss anything about [Petitioner's] immigration, other than [their] initial discussion where [his counsel] told [Petitioner] that the criminal case had nothing to do with [his] immigration."

For his third and final allegation of his counsel's ineffectiveness, Petitioner targets his second change-of-plea hearing on October 14, 2004, during which he pleaded guilty to the superseding § 1001 charge. In the course of pleading guilty to that charge, Petitioner admitted that he made materially false statements "in connection with an application for a United States Passport" and "[i]n order to induce and secure the issuance of a United States Passport." He now claims, however, that his counsel should not have let him admit to such an

underlying factual basis. Under Sixth Amendment standards, Petitioner argues, an effective attorney would have instead instructed him to only plead guilty to making materially false statements in connection with and for the purpose of obtaining a "travel document."

Petitioner asserts that the choice of which phrase to use—"travel document" or "United States Passport"—is not merely a matter of semantics. By pleading guilty to making a false statement in connection with a U.S. Passport, he argues that his counsel, for all intents and purposes, allowed him to "plead guilty to facts establishing passport fraud even though the charge was no longer pending, and the facts involving a passport were not elements of the charge of making false statements." And based on this de facto admission of passport fraud, Petitioner claims that he unwittingly admitted he had made a false claim of United States citizenship, which, as we noted above, now forever precludes him from obtaining lawful permanent resident status and subjects him to deportation at any moment. See 8 U.S.C. §§ 1182(a)(6)(C)(ii), 1227(a)(3)(D). If, however, he had pleaded guilty to making a false statement in connection with a travel document, Petitioner notes that he would not have been admitting to a factual basis that implied a false claim of citizenship. And since, in Petitioner's opinion, a reference to a generic "travel document" would have been more than sufficient

to meet the elements of a § 1001 charge, he claims that an effective attorney should have known to use that less destructive term.

The district court, which took the first shot at Petitioner's coram nobis petition under the authority vested to it by the All Writs Act, 28 U.S.C. § 1651(a), concluded that none of Petitioner's three arguments for ineffective assistance of counsel were meritorious. See George, 676 F.3d at 253 ("The authority to grant coram nobis relief derives from the All Writs Act, 28 U.S.C. § 1651(a), which empowers federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'"). It therefore denied him a writ of error coram nobis. Petitioner accordingly appeals and asks us to do what the district court would not.

Our jurisdiction arises under 28 U.S.C. § 1291. Trenkler v. United States, 536 F.3d 85, 95 (1st Cir. 2008). Further, "we afford de novo review to the district court's legal conclusions and clear-error review to its findings of fact." George, 676 F.3d at 256. Where, as here, the district court "did not conduct an evidentiary hearing and denied the writ as a matter of law," such a standard translates to plenary review. Id. As always, we are also free to "affirm on any basis apparent in the record," even if it would "require[] ruling on

- 9 -

arguments not reached by the district court or even presented to us on appeal." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013) (second quotation quoting Jordan v. U.S. Dep't of Justice, 668 F.3d 1188, 1200 (10th Cir. 2011)).

We note at the outset that Petitioner's case presents one of the few instances where we could even consider granting a writ of error coram nobis: "[I]n its modern form, [this writ] is ordinarily available only to a criminal defendant who is no longer in custody." Trenkler, 536 F.3d at 98. Petitioner undoubtedly satisfies that prerequisite. But his eligibility for this "remedy of last resort," George, 676 F.3d at 253, hinges on more than the simple fact that he is no longer serving his sentence. For one thing, he must "adequately explain his failure to seek relief earlier through other means." Murray, 704 F.3d at 29. Further, he must also "show that he continues to suffer a significant collateral consequence from the judgment being challenged and that issuance of the writ will eliminate this consequence." Id. Finally, and as we have alluded to several times before, "he must demonstrate that the judgment resulted from a fundamental error." Id. And even if Petitioner satisfies this tripartite test, we "retain[] discretion to grant or deny the writ." Id. at 29-30. Indeed, "[t]he Supreme Court has always envisioned coram nobis as strong medicine, not profligately to be dispensed," so we must issue this writ "only

- 10 -

under circumstances compelling such action to achieve justice." George, 676 F.3d at 254-55 (second quotation quoting United States v. Morgan, 346 U.S. 502, 511 (1954)).

We assume for the purposes of argument that Petitioner can adequately explain why he did not seek relief from his § 1001 conviction any earlier. We also have little trouble concluding that Petitioner continues to suffer significant collateral consequences from his § 1001 conviction and that a writ of error coram nobis would remedy those consequences. As Petitioner himself noted, he cannot obtain lawful permanent resident status because the underlying facts of that conviction involved a false claim of United States citizenship, and he is therefore subject to deportation at any moment. See 8 U.S.C. §§ 1182(a)(6)(C)(ii), 1227(a)(3)(D). "Although we have not explicitly set out what comprises a continuing collateral consequence," we believe that, whatever the definition, Petitioner's dilemma satisfies that requirement. George, 676 F.3d at 255-56; see also Murray, 704 F.3d at 29 n.6 (noting that something "more than the mere fact of conviction is needed" to prove a continuing collateral consequence). And of course, vacating or revising the underlying factual basis of his conviction via a writ of error coram nobis would alleviate that problem.

That leaves us to determine whether Petitioner's § 1001 conviction resulted from a fundamental error—i.e., whether his counsel was constitutionally ineffective under the Sixth Amendment. To succeed on that argument, Petitioner must first show that his counsel's "performance was deficient," and he must then show that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. The first requirement necessitates a demonstration that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," id., and in reviewing such an allegation, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (quoting Strickland, 466 U.S. at 689). Put differently, we will find deficiency only "where, given the facts known [to counsel] at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted).

The prejudice requirement, meanwhile, necessitates a demonstration of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rossetti v. United States, 773 F.3d 322, 327 (1st Cir. 2014) (quoting Strickland, 466 U.S. at 694).

Further, that probability "must be substantial, not just conceivable," Rivera-Rivera v. United States, 827 F.3d 184, 187 (1st Cir. 2016) (quoting Hensley v. Roden, 755 F.3d 724, 736 (1st Cir. 2014)), or, stated differently, "a probability sufficient to undermine confidence in the outcome," Mello v. DiPaulo, 295 F.3d 137, 142 (1st Cir. 2002) (quoting Strickland, 466 U.S. at 694). "Hence, [Petitioner's] Sixth Amendment claim[s] will fall short unless he can show a substantial likelihood that he would have obtained a different outcome" on his § 1001 charge. Rivera-Rivera, 827 F.3d at 187.

Petitioner's first allegation—that his counsel sua sponte changed his plea by allowing the government to file a superseding indictment without consulting him about it—fails for two reasons. First, we do not believe that his counsel's decision to allow the government to file a superseding indictment was constitutionally deficient. Instead, we conclude that it was a valid, reasoned decision meant to avoid further delay. If Petitioner's counsel had fought the government's decision to file a superseding indictment, the district court indicated it simply would have dismissed the case without prejudice, and the government indicated that it still would have filed new charges under § 1001 in a brand new indictment. As a practical matter, this would have been the exact same scenario that Petitioner ended up facing: being charged under § 1001.

The only difference is that, as Petitioner's counsel recognized, the government would have had to re-arrest Petitioner, which would have resulted in an unnecessary delay. Because Petitioner's counsel saw the writing on the wall and agreed with the government's request for a superseding indictment to avoid this delay, we cannot say that this was a constitutionally deficient choice even though counsel did not discuss the matter with Petitioner.

Second, even if his counsel's decision was constitutionally deficient, Petitioner cannot show that he suffered any prejudice. Again, the result of the proceeding would have been no different had his counsel not agreed with the government's wish to file a superseding indictment: Petitioner eventually would have been charged under § 1001 for making a material false statement. Petitioner, however, argues that the initial result of the proceeding would have been different because the § 1542 charge for passport fraud would have been dismissed. As such, he contends that if the government chose to file a new charge under § 1001, he in turn could have filed a new motion to transfer that charge to the Eastern District of New York (an action he could not take once his attorney agreed to a superseding indictment in the District of New Hampshire). And if the district court granted that motion, Petitioner claims it would have been easier for him to defend against the charge

- 14 -

since he would have been in his hometown and with his family. But Petitioner has provided no evidence or other compelling information suggesting that the district court would have granted any motion to transfer a new § 1001 charge to the Eastern District of New York. In fact, the record before us shows a strong likelihood that Petitioner still would have been subjected to a § 1001 charge in the District of New Hampshire. Thus, at most, the probability the district court would have granted any such motion is merely conceivable, not substantial. And even if the district court did grant his motion, there is no evidence suggesting that he could have successfully defended against a § 1001 prosecution in New York. We therefore cannot say Petitioner suffered any prejudice.

Petitioner's second allegation of his counsel's ineffectiveness—that his counsel failed to advise and affirmatively misadvised him of the immigration consequences of pleading guilty—also fails. For starters, under Chaidez v. United States, 133 S. Ct. 1103 (2013), we cannot grant Petitioner any relief for his claims insofar as they relate to his counsel's alleged failure to advise. In Chaidez, the Supreme Court expressly held that it had "announced a new rule in Padilla," and for that reason "defendants whose convictions became final prior to Padilla . . . cannot benefit from its holding." Id. at 1113. Further, "the Supreme Court certainly

- 15 -

decided that <u>Padilla</u>'s new rule covers failure-to-advise claims." <u>Castro-Taveras</u>, 841 F.3d at 43. Consequently, Plaintiff, whose judgment was entered in 2005, cannot rely on the 2010 <u>Padilla</u> decision to claim that his attorney was constitutionally ineffective by failing to advise him of the immigration consequences of pleading guilty.

The story is different for Petitioner's claims that his attorney affirmatively misadvised him. Unlike failure-to-advise claims, "<u>Padilla</u>'s misadvice holding did not constitute a new rule" and is therefore not barred retroactively under <u>Chaidez</u>. <u>Castro-Taveras</u>, 841 F.3d at 51. Thus, as of 2005 when judgment was entered, Petitioner's counsel could have been constitutionally ineffective under Sixth Amendment standards if he did, in fact, affirmatively misadvise Petitioner about the immigration consequences of pleading guilty. <u>Id.</u> (holding that at least as of 2003—two years before Petitioner's judgment of conviction—affirmative-misadvice claims were "so embedded in the fabric of the Sixth Amendment framework that 'all reasonable jurists' would have agreed that <u>Strickland</u> applied to [those] claims" (citation omitted) (quoting <u>Lambrix</u> v. <u>Singletary</u>, 520 U.S. 518, 528 (1997))).

But even though we theoretically could grant Petitioner relief for his claims that his attorney misadvised him about the immigration consequences of pleading guilty,

- 16 -

Petitioner hits another snag: although he makes this misadvice argument on appeal, he did not advance this same argument in his original coram nobis petition. In fact, his petition alleged only that his attorney failed to advise him of any immigration consequences, and Petitioner sought to assert misadvice claims only when the government moved to dismiss his petition on the grounds that Padilla's holding on failure-to-advise claims was not retroactive under Chaidez. We do not take kindly to parties who "shift[] legal theories and s[eek] to re-characterize [their] Complaint[s] in a way that might parry [the defendants'] blow[s]." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 85 (1st Cir. 2008). "The court, and the defendants, are entitled to rely on the plain language and the structure of the complaint in determining what claims are present there," and "the plaintiff is not entitled to pursue 'every legal theory that a court may some day find lurking in the penumbra of the record.'" Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 91 (1st Cir. 2014) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). "Otherwise, waiver looms." Snyder v. Collura, 812 F.3d 46, 51 (1st Cir. 2016).

Moreover, even if we generously assume that Petitioner did not waive his affirmative-misadvice claims, Petitioner suffered no prejudice from his attorney's alleged misadvice because the district court itself informed Petitioner that he

- 17 -

faced immigration consequences. For instance, at his first change-of-plea hearing on July 29, 2004, while Petitioner was still charged with passport fraud, the following exchange took place:

> THE COURT: Now, do you understand as a consequence of this offense it is possible that you could be deported?
>
> [PETITIONER]: Yes, sir.

And at his second-change-of plea hearing on October 14, 2004, where Petitioner pleaded guilty to making a material false statement, a similar exchange occurred:

> THE COURT: As a result of this conviction, do you understand that you could face the possibility of deportation?
>
> [PETITIONER]: Yes, sir.

Given that the district court wisely took it upon itself to inform Petitioner of the immigration consequences of pleading guilty, we do not see a substantial likelihood that anything different would have happened had Petitioner's counsel not (allegedly) misadvised him.

Petitioner's third and final allegation of his counsel's ineffectiveness—that his counsel should not have let him plead guilty to facts establishing passport fraud—also fails. For one thing, under § 1001, "the government is required to prove not only that the defendant's statements were false, but also that they were material," United States v. Arcadipane,

- 18 -

41 F.3d 1, 7 (1st Cir. 1994), which means that "[t]he statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed,'" United States v. Gaudin, 515 U.S. 506, 509 (1995) (second alteration in original) (quoting Kungys v. United States, 485 U.S. 759, 770 (1988)).  As should be obvious, the district court could not have determined whether Petitioner's false statements had a tendency to influence a decision of the U.S. State Department's National Passport Center if it had not known he had, in fact, submitted a false application for a United States Passport.  Indeed, the district court could not have gleaned this same information had Petitioner merely admitted he had made false statements in order to obtain a generic travel document.  Even more, there is no persuasive evidence that the prosecutor would have agreed to the amorphous customization of the charge even had it been sought.  We therefore conclude that Petitioner's counsel was not constitutionally ineffective by allowing him to plead guilty under § 1001 to making material false statements in order to obtain a U.S. Passport.

Accordingly, because Petitioner's counsel was not constitutionally ineffective under the Sixth Amendment in any way, Petitioner cannot establish that his conviction under § 1001 for making a material false statement arose from any

fundamental error. We therefore deny him a writ of error coram nobis on that ground alone. But we note that even if Petitioner could satisfy our tripartite test for coram nobis relief, we would exercise our discretion to deny him such a writ in any event. "[W]hen a defendant seeks to vacate a guilty-plea conviction by way of coram nobis, red flags accompany that request" and "great caution is warranted." George, 676 F.3d at 257–58. And given that Petitioner entered a guilty plea in this case, it "seems dubious that granting the writ w[ould] promote the interests of justice." Id. at 260. Thus, no matter how he slices it, Petitioner remains bound by his conviction.

***

"A Hail Mary pass in American football is a long forward pass made in desperation at the end of a game, with only a small chance of success. The writ of error coram nobis is its criminal-law equivalent." George, 676 F.3d at 251. Petitioner cannot satisfy this difficult standard. We therefore AFFIRM the district court's denial of a writ of error coram nobis.