# United States Court of Appeals
## For the First Circuit

No. 19-1971

UNITED STATES OF AMERICA,

Appellee,

v.

JESUS LEONARDO CASTILLO-MARTINEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Zainabu Rumala, Assistant Federal Public Defender, for appellant.
Karen Eisenstadt, Assistant United States Attorney, with whom Alexia R. De Vincentis, Assistant United States Attorney, and Andrew E. Lelling, United States Attorney, were on brief, for appellee.

October 27, 2021

**LYNCH**, **Circuit Judge**. This case concerns the interpretation of a statutory bar in 8 U.S.C. § 1326(d) precluding certain collateral attacks in criminal proceedings. Appellant Jesus Leonardo Castillo-Martinez falls within the ambit of those limitations for the reasons stated below. We affirm the district court's denial of his motion to dismiss the criminal proceedings against him.

Castillo-Martinez was removed to the Dominican Republic in April 2013 after he was convicted in Massachusetts state court of illegally distributing marijuana and in New Hampshire state court of trafficking OxyContin. He illegally returned to the United States and was arrested on August 20, 2016, on a Florida fugitive warrant for a new controlled substances offense committed in Florida. He was removed again on November 1, 2016.

On June 23, 2018, after illegally reentering the United States again, he was arrested in Massachusetts once more on state heroin trafficking charges. He was then federally indicted for unlawfully reentering the United States in violation of 8 U.S.C. § 1326(a), which provides that "any alien who (1) has been . . . deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both."

Castillo-Martinez moved to dismiss the indictment under 8 U.S.C. § 1326(d), making two arguments that the element of unlawful reentry was not satisfied because his original removal order was not valid. First, he argued that his original removal order in 2012 was defective because the Notice to Appear ("NTA") he received did not include the time and place of his hearing. Second, he argued that his removal order in 2012 was based on the classification of his marijuana conviction as an aggravated felony, a classification to which he said his immigration counsel provided ineffective assistance by not objecting. He then argued that the classification was improper under the Supreme Court's later decision in Moncrieffe v. Holder, 569 U.S. 184 (2013), issued after his removal order. As a result, he argued, the original removal order must be declared invalid, and the criminal charges for illegal reentry must be dismissed. The district court denied Castillo-Martinez's motion. United States v. Castillo-Martinez, 378 F. Supp. 3d 46, 55 (D. Mass. 2019).

We affirm.

**I.**

Castillo-Martinez was born in the Dominican Republic in 1973 and was admitted to the United States as a lawful permanent resident in 1981. In 1996, he was convicted of violating Mass. Gen. Laws ch. 94C, § 32C by "knowingly or intentionally manufactur[ing], distribut[ing], dispens[ing] or cultivat[ing]"

marijuana, a Class D substance under Massachusetts law.  For this crime, he received a suspended sentence and probation.  See id. §§ 31, 32C.  He remained in the United States.

In February 2011, Castillo-Martinez was indicted by a New Hampshire grand jury for conspiring to sell 15,000 tablets of OxyContin for approximately $272,000 in violation of N.H. Rev. Stat. Ann. § 318-B:2(I).  While he was awaiting trial, U.S. Immigration and Customs Enforcement ("ICE") lodged a detainer against him.  He was later convicted of the conspiracy charge in June 2012 and received a suspended sentence and probation.[1]

Shortly after Castillo-Martinez's OxyContin conviction, the Department of Homeland Security ("DHS") served him with an NTA alleging that he was removable from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony.  The NTA was based on Castillo-Martinez's 1996 marijuana conviction and did not state his OxyContin conviction as its basis.  The NTA did not state a specific date or time for Castillo-Martinez's hearing and noted that they were "to be set."

Castillo-Martinez, acting through counsel, conceded removability as alleged in the NTA under the law of the First Circuit, which held that his marijuana conviction was an aggravated

---

[1] Castillo-Martinez received a 576-day credit toward his sentence for time served.  That 576-day portion of his sentence was not suspended.

felony.  Castillo-Martinez made the counseled choice to apply for deferral of removal under the Convention Against Torture ("CAT"). He submitted affidavits in support of his CAT petition and testified at an immigration hearing.  On November 1, 2012, an immigration judge ("IJ") denied him CAT relief and ordered that he be removed to the Dominican Republic.[2]  Castillo-Martinez unsuccessfully appealed this decision to the Board of Immigration Appeals ("BIA") on March 13, 2013, and was removed to the Dominican Republic on April 16, 2013.  He did not challenge the BIA's decision by seeking a petition for review.

Castillo-Martinez returned to the United States at some point before April 28, 2016, when he was arrested in Florida on another controlled substance charge.  He fled Florida, and was arrested on August 20, 2016, in Massachusetts pursuant to a "Fugitive from Justice" warrant from Florida and was taken into administrative custody by ICE.  His removal order was reinstated, and, on November 1, 2016, he was removed to the Dominican Republic.

---

[2] The IJ issued a removal order for Castillo-Martinez, which resulted in the execution of a "warrant of removal/deportation."  "We use the terms 'removal' and 'deportation' interchangeably in this opinion." United States v. Luna, 436 F.3d 312, 314 n.1 (1st Cir. 2006).  While 8 U.S.C. § 1326(d) refers to deportation orders, it encompasses the change in name to removal orders. See United States v. Palomar-Santiago, 141 S. Ct. 1615, 1619 (2021) (applying 8 U.S.C. § 1326(d) to a removal order); Padilla v. Kentucky, 559 U.S. 356, 364 n.6 (2010) ("The changes to our immigration law have also involved a change in nomenclature; the statutory text now uses the term 'removal' rather than 'deportation.'").

Castillo-Martinez returned to the United States again. On June 23, 2018, he was arrested in Massachusetts and charged with trafficking heroin. On August 2, 2018, he was federally indicted for unlawfully reentering the United States in violation of 8 U.S.C. § 1326(a).

In February 2019, Castillo-Martinez moved to dismiss the unlawful reentry charge. He made two arguments that the unlawful reentry element of 8 U.S.C. § 1326(a) was not met because there was no valid prior removal order. His first argument was that there was no valid prior removal order because under the Supreme Court's decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), the fact that the NTA did not include a specific date or time deprived the immigration court of jurisdiction and prevented it from ordering his removal. His second argument was that there was no valid prior removal order based on the Supreme Court's divided decision in Moncrieffe, issued shortly after his removal. He argued that under Moncrieffe, his marijuana conviction could not serve as the basis for his 2012 removal order because that conviction was not an aggravated felony, and further that his counsel's failure to object on this basis amounted to ineffective assistance.

The government responded to Castillo-Martinez's two arguments. As to the second argument, the government relied on the statutory limitations on collateral attacks set forth in 8

U.S.C. § 1326(d) and specifically argued that he did not fall within any of the narrow exceptions that would have permitted a collateral attack. Subsection 1326(d) states that in a criminal proceeding under 8 U.S.C. § 1326(a), "an alien may not challenge the validity of [a] deportation order . . . unless" the alien makes three showings: (1) "the alien exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). The government argued that Castillo-Martinez failed to exhaust his administrative remedies, that he was not denied the opportunity for judicial review, and that the removal proceedings were not fundamentally unfair.

The district court denied the motion. As to Castillo-Martinez's first argument, relying on case law from other courts of appeals, it held that the IJ had jurisdiction to issue a removal order "[b]ecause Castillo-Martinez was served with an NTA containing all of the required information and was presumably served a separate Notice of Hearing informing him of the time and place of his removal hearing (given that he actually appeared at that hearing)." Castillo-Martinez, 378 F. Supp. 3d at 53; see also Santos-Santos v. Barr, 917 F.3d 486, 490 (6th Cir. 2019); Karingithi v. Whitaker, 913 F.3d 1158, 1162 (9th Cir. 2019).

- 7 -

As to his second argument, the district court held that Castillo-Martinez had not made the required showings necessary under 8 U.S.C. § 1326(d) to collaterally attack the validity of his original removal order. Castillo-Martinez, 378 F. Supp. 3d at 54. First, because Castillo-Martinez "concede[d] that he failed to exhaust his administrative remedies and was not denied an opportunity for judicial review," the court held that he had not satisfied the first two § 1326(d) requirements. See id.; 8 U.S.C. § 1326(d)(1)-(2). Next, the court held that even if Castillo-Martinez could be excused from meeting some of § 1326(d)'s requirements if he could show his counsel had been ineffective, he still could not prevail because he had not shown that his counsel's performance was deficient or that he was prejudiced by either his counsel's actions or the deportation order. Castillo-Martinez, 378 F. Supp. 3d at 54-55; see also 8 U.S.C. § 1326(d)(3) (requiring a showing that "the entry of the [deportation] order was fundamentally unfair" to collaterally attack it in a criminal proceeding).

Castillo-Martinez pleaded guilty to the unlawful reentry charge. He was sentenced to time served and a three-year term of supervised release. He reserved the right to appeal the court's denial of his motion to dismiss and timely exercised that right.

We review de novo the legal conclusions underlying the district court's denial of Castillo-Martinez's motion to dismiss. See United States v. Mendoza, 963 F.3d 158, 161 (1st Cir. 2020), cert. denied sub nom. Mendoza-Sanchez v. United States, 141 S. Ct. 834 (2020). We review its factual findings for clear error and its "ultimate ruling" for abuse of discretion. See id. (quoting United States v. Doe, 741 F.3d 217, 226 (1st Cir. 2013)). On appeal, Castillo-Martinez renews the two main arguments he made to the district court.

A.

Castillo-Martinez's first argument, based on Pereira, has already been considered and rejected by the First Circuit since the district court's ruling. See Mendoza, 963 F.3d at 161 ("We have already squarely rejected the contention that the omission of the initial hearing date and time in a notice to appear deprives the immigration court of jurisdiction over a removal proceeding."); Goncalves Pontes v. Barr, 938 F.3d 1, 6-7 (1st Cir. 2019).[3] It fails for this reason.

---

[3] Castillo-Martinez submitted a Rule 28(j) letter saying that the Supreme Court's recent decision in Niz-Chavez v. Garland, 141 S. Ct. 1474 (2021), supported his argument. Niz-Chavez dealt with whether an NTA that did not include certain information triggered the Illegal Immigration Reform and Immigrant Responsibility Act's stop-time rule. See id. at 1479. The Court described a "notice to appear" in a removal proceeding as a single "case-initiating document," id. at 1482, but it did not suggest

- 9 -

Castillo-Martinez's second argument is based on Moncrieffe and his contention that he satisfies the conditions under § 1326(d), which would permit him to collaterally attack his prior removal. Subsection 1326(d) starts with a prohibition on such collateral attacks, stating that in a § 1326(a) criminal proceeding, "an alien may not challenge the validity of [a] deportation order." The subsection then sets forth an exception in an "unless" clause, providing that an alien may not bring a collateral attack unless the alien satisfies three conditions: (1) "the alien exhausted any administrative remedies that may have been available to seek relief against the order"; (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).[4]

---

that a single-document NTA is also required to establish jurisdiction. Thus, we remain bound by our holding in Mendoza that "jurisdiction of an immigration court is governed by agency regulation, not by [statute]. . . ." 963 F.3d at 161 (internal citations omitted); see Maniar v. Garland, 998 F.3d 235, 242 & n.2 (5th Cir. 2021) (explaining that Niz-Chavez does not affect its prior holding that an immigration court's jurisdiction is governed by federal regulations and that an NTA without date or time information is sufficient to confer jurisdiction).

[4] Congress passed § 1326(d) with the intent of insulating removal orders against collateral attacks in criminal proceedings, emphasizing the importance of finality and deference to immigration agency determinations while guaranteeing minimal due process. See 140 Cong. Rec. S28440-41 (daily ed. Oct. 6, 1994)

The district court was correct that Castillo-Martinez has not met any of the three statutory requirements. He has not exhausted the administrative remedies for his newly raised ineffective assistance claim. Judicial review was plainly available. The 2012 removal proceeding was not fundamentally unfair.

1.

Castillo-Martinez fails to satisfy the first two statutory requirements of § 1326(d). He neither exhausted his administrative remedies nor was he deprived of an opportunity for judicial review. As the Supreme Court recently emphasized, "each of the statutory requirements of § 1326(d) is mandatory." United States v. Palomar-Santiago, 141 S. Ct. 1615, 1622 (2021).

---

(statement of Sen. Smith) (stating that the language of § 1326(d) "which is taken directly from the U.S. Supreme Court case of United States v. Mendoza-Lopez, 481 U.S. 828 (1987), is intended to ensure that minimum due process is followed in the original deportation proceeding while preventing wholesale, time-consuming attack on underlying deportation orders.").

In civil proceedings, a noncitizen who reenters the United States illegally after having previously been ordered removed may not challenge the original removal order at all if that original order is reinstated. 8 U.S.C. § 1231(a)(5). Subsection 1231(a)(5) provides that the reinstated order "is not subject to being reopened or reviewed," and the noncitizen "is not eligible and may not apply for any relief" from the order. Id. Subsection 1231(a)(5) underscores the importance of the finality of a removal order once entered. There is no reason to think that Congress intended a lesser degree of finality in criminal cases than in civil cases.

- 11 -

We may affirm a district court's decision based on any independent ground supported by the record, even if the district court did not reach the issue. See United States v. Cabrera-Polo, 376 F.3d 29, 31 (1st Cir. 2004) ("We are not committed to the district court's reasoning, but, rather, may affirm its order on any independent ground made apparent by the record."); see also Dimott v. United States, 881 F.3d 232, 238-40 (1st Cir. 2018).

Castillo-Martinez conceded that he has not met the first two § 1326(d) requirements in the traditional sense. See Castillo-Martinez, 378 F. Supp. 3d at 54. The Supreme Court issued its decision in Moncrieffe on April 23, 2013, shortly after Castillo-Martinez's first removal. Between April 2013 and February 2019, when he moved to dismiss the unlawful reentry charge, Castillo-Martinez never once filed a motion to reopen his 2012 removal proceedings based on ineffective assistance of counsel in light of Moncrieffe. See 8 U.S.C. § 1229a(c)(7).[5]

We have long recognized the exhaustion requirement as an important element of the § 1326(d) requirements for an alien to collaterally attack a removal order. See United States v. Luna, 436 F.3d 312, 317 (1st Cir. 2006). This exhaustion requirement is

---

[5] Motions to reopen removal hearings are disfavored because of "the compelling public interests in finality and the expeditious processing of proceedings." Muyubisnay-Cungachi v. Holder, 734 F.3d 66, 71 (1st Cir. 2013) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)).

consistent with the congressional intent underlying § 1326(d) to defer to agency determinations and restrict collateral attacks on those agency determinations.

Castillo-Martinez nevertheless argues that if he can show that his counsel was ineffective, we should excuse his failure even where he failed to exhaust his ineffective assistance claim before the BIA. We do not accept his proposition, though we acknowledge that some circuits adopted this approach before the Supreme Court's recent decision in Palomar-Santiago. See United States v. Lopez-Chavez, 757 F.3d 1033, 1044 (9th Cir. 2014) (holding that the first two § 1326(d) requirements were satisfied because "counsel's ineffectiveness . . . caused [defendant's] failure to exhaust administrative remedies and deprived him of his opportunity for judicial review"); United States v. Cerna, 603 F.3d 32, 40 (2d Cir. 2010) (holding that ineffective assistance of counsel may be grounds to excuse § 1326(d)(2)'s requirement).

The text of § 1326(d) and the Supreme Court's decision in Palomar-Santiago do not support excusing Castillo-Martinez's failure to satisfy the statutory requirements. In Palomar-Santiago, the unanimous Court answered the statutory question before it by holding that the "first two procedural requirements are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable." Palomar-Santiago, 141 S. Ct. at 1621. The Ninth Circuit's contrary holding

was "incompatible with the text of § 1326(d)." Id. at 1620. The Court held that "[w]hen Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust.'" Id. at 1621 (quoting Ross v. Blake, 136 S. Ct. 1850, 1857 (2016)) (emphasis added). That is exactly what Castillo-Martinez asks us to do. He concedes that he has not met the first two § 1326(d) requirements but asks us to excuse those failures. See Ross, 136 S. Ct. at 1856 (holding that, other than the requirement that a remedy be "available," the text of the Prison Litigation Reform Act ("PLRA") "suggests no limits on an inmate's obligation to exhaust -- irrespective of any 'special circumstances'").

The Supreme Court rejected Palomar-Santiago's counterargument that he should be excused from showing the first two procedural requirements of § 1326(d) because further administrative review of a removal was not "available" when the IJ erroneously informed him that his prior conviction rendered him removable. Palomar-Santiago, 141 S. Ct. at 1621 ("Noncitizens, the argument goes, cannot be expected to know that the immigration judge might be wrong."). The Court found that administrative review and judicial review of the removal were not "unavailable." Id. The Court reasoned that "[a]dministrative review of removal orders exists precisely so noncitizens can challenge the substance of immigration judges' decisions." Id. The Court further stated

that "[t]he immigration judge's error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error."  Id.

This reasoning applies equally to Castillo-Martinez. The BIA "provides a process for adjudicating ineffective assistance of counsel claims through a motion to reopen." Gicharu v. Carr, 983 F.3d 13, 17 (1st Cir. 2020).  Castillo-Martinez does not explain why he never moved to reopen his removal proceedings after Moncrieffe.  The ninety-day deadline for filing such a motion, see 8 C.F.R. § 1003.23(b)(1), does not render relief via a motion to reopen unavailable.  As this court has previously explained, "[t]he BIA . . . entertains claims for equitable tolling of the filing deadline for motions to reopen where it is alleged that ineffective assistance of counsel caused the motion to be untimely."  Gicharu, 983 F.3d at 17 (citing Pineda v. Whitaker, 908 F.3d 836, 840-41 (1st Cir. 2018)).  Even if "the standard for establishing equitable tolling is daunting, it does not render review by the BIA . . . unavailable."  Id. at 18 (internal citation omitted); cf. Ross, 136 S. Ct. at 1858 (explaining that the PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies" because "[a]n inmate . . . must exhaust available remedies[] but need not exhaust unavailable ones").

Ordinarily, an alien raising an ineffective assistance of counsel claim through a motion to reopen must comply with the procedural requirements set forth in the leading BIA case <u>Matter of Lozada</u>, 19 I. & N. Dec. 637 (BIA 1988):

> (1) an affidavit explaining the petitioner's agreement with counsel regarding legal representation; (2) evidence that counsel has been informed of the allegations of ineffective assistance and has had an opportunity to respond; and (3) if it is asserted that counsel's handling of the case involved a violation of ethical or legal responsibilities, a complaint against the attorney filed with disciplinary authorities or, in the alternative, an explanation for why such a complaint has not been filed.

<u>Ferreira</u> v. <u>Barr</u>, 939 F.3d 44, 46 (1st Cir. 2019) (quoting <u>Pineda</u>, 908 F.3d at 839 n.2); <u>see</u> <u>Lozada</u>, 19 I. & N. Dec. at 639; <u>see also</u> <u>Pineda</u>, 908 F.3d at 839 n.2 ("The BIA's decision in Lozada is widely recognized as a leading case with respect to claims of ineffective assistance of counsel in the immigration context."). We have recognized that the <u>Lozada</u> requirements are "designed to give the BIA sufficient information to inform its decision without resorting to an evidentiary hearing." <u>Ferreira</u>, 939 F.3d at 46. In the BIA's view, false claims of ineffective assistance can be identified by a counsel's response to the notification or the alien's insufficiently explained refusal to file a formal complaint against that counsel. <u>Saakian</u> v. <u>INS</u>, 252 F.3d 21, 26 (1st Cir. 2001). These requirements lessen the chances of

- 16 -

meritless claims and make it easier for the BIA to act on meritorious claims of ineffective assistance. Id.

Once the procedural requirements are satisfied, the BIA reviews ineffective assistance claims for two substantive requirements: (1) immigration counsel's performance was deficient; and (2) immigration counsel's performance caused prejudice to the client. See Matter of Melgar, 28 I. & N. Dec. 169, 171 (BIA 2020); Lozada, 19 I. & N. Dec. at 638.

After the BIA issues its decision, an alien may then file a petition for review with our court. When reviewing the BIA's decisions, we uphold findings of fact about ineffective assistance "as long as they are supported by substantial evidence on the record as a whole." Ferreira, 939 F.3d at 45. We review the BIA's denial of a motion to reopen for ineffective assistance for abuse of discretion. Muyubisnay-Cungachi v. Holder, 734 F.3d 66, 70 (1st Cir. 2013).

Castillo-Martinez and the dissent would have us bypass this process entirely and in doing so, alter our standard of review from the substantial evidence standard to de novo review of fundamental fairness concerns. The dissent's approach would have us decide de novo, without record support, whether counsel's conduct constituted ineffective assistance. Subsection 1326(d) does not allow for this. The ability to assert an ineffective assistance of counsel claim to the BIA was available to Castillo-

Martinez well before his February 2019 motion to dismiss his unlawful reentry charge. He failed to exhaust any such claim before the agency.

2.

Even assuming dubitante that Castillo-Martinez can satisfy § 1326(d)'s first two requirements despite his failure to move to reopen his removal proceedings or assert an ineffective assistance claim to the agency, he has not shown that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3).

Castillo-Martinez argues that he can satisfy this third requirement of § 1326(d) by demonstrating ineffective assistance of counsel, but he has not met his burden of showing that his immigration counsel was ineffective on the record before us.

Aliens in removal proceedings are not defendants in criminal proceedings. The same rules do not apply. See Ferreira, 939 F.3d at 46 n.1. For example, aliens in removal proceedings have no Sixth Amendment right to counsel. See id.; Saakian, 252 F.3d at 24. In his removal proceeding, Castillo-Martinez sought a benefit from the government: to remain in the country. The proceeding was not to determine whether his liberty would be involuntarily restrained; indeed, he remained free to depart on his own at any time. It is true that under Reno v. Flores, removal proceedings must comport with the fundamental requirements of the Due Process Clause under the Fifth Amendment. 507 U.S. 292, 306

- 18 -

(1993). Accordingly, his burden of showing ineffective assistance of counsel in his removal proceeding is different than the burden put on criminal defendants under Strickland. Cf. Strickland v. Washington, 466 U.S. 668, 687 (1984). We have held that "[i]neffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 17 (1st Cir. 2008) (quoting Rodríguez-Lariz v. INS, 282 F.3d 1218, 1226 (9th Cir. 2002)). To establish that a proceeding was fundamentally unfair because of ineffective assistance of immigration counsel, an alien must show "[1] a deficient performance by counsel and [2] 'a reasonable probability of prejudice resulting from [his] former representation.'" Muyubisnay-Cungachi, 734 F.3d at 72 (quoting Zeru v. Gonzales, 503 F.3d 59, 72 (1st Cir. 2007)).

Castillo-Martinez cannot meet that standard before the BIA, nor can he meet that standard before this court.

i.

Even on review of the record before us, Castillo-Martinez has not shown that his counsel at the removal proceeding was deficient. Castillo-Martinez argues that his counsel "was ineffective in conceding that Castillo-Martinez's marijuana offense qualified as an aggravated felony." His counsel's

- 19 -

strategic concession was based on longstanding and controlling First Circuit precedent. See Julce v. Mukasey, 530 F.3d 30, 35 (1st Cir. 2008), abrogated by Moncrieffe, 569 U.S. at 187. Absent "unusual circumstances," "the case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Powell v. United States, 430 F.3d 490, 491 (1st Cir. 2005) (quoting Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995)).

Any ineffective assistance of counsel claim is also defeated by the fact that Castillo-Martinez's counsel had strategic reasons for conceding removability. In addition to the marijuana conviction, Castillo-Martinez was convicted of conspiracy to sell OxyContin under N.H. Rev. Stat. Ann. § 318-B:2(I) before the government sent him an NTA. This conviction qualifies as an aggravated felony and would have provided a standalone basis for mandatory removal. See 8 U.S.C. § 1227(a); id. § 1227(a)(2)(A)(iii).[6] Castillo-Martinez's counsel may have

---

[6] To decide if a state conviction qualifies as an aggravated felony under the Immigration and Nationality Act ("INA"), we "employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." Moncrieffe, 569 U.S. at 190. Under this approach, we determine if "'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." Id. at 190 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186 (2007)).

Under the INA, an aggravated felony includes "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime (as defined in [18 U.S.C.

correctly concluded that even after predicting the Supreme Court would overturn controlling First Circuit precedent in Moncrieffe, any objection on this basis would be futile given Castillo-

---

§ 924(c)]." 8 U.S.C. § 1101(a)(43)(B). A drug trafficking crime is "any felony punishable under the Controlled Substances Act [("CSA")]." 18 U.S.C. § 924(c)(2). Under the CSA, it is a felony "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," 21 U.S.C. § 841(a)(1), if the "maximum term of imprisonment authorized" is more than one year, 18 U.S.C. § 3559(a)(5); see Moncrieffe, 569 U.S. at 188.

In United States v. Burghardt, 939 F.3d 397, 406-09 (1st Cir. 2019), applying the categorical approach, this court held that because the elements of selling a controlled substance under N.H. Rev. Stat. Ann. § 318-B:2(I) were not broader than the elements of the generic "serious drug offense" defined in the Armed Career Criminal Act, a § 318-B:2(I) conviction for selling drugs is a "serious drug offense." Id. A "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in [21 U.S.C. § 802]), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

As is clear from their respective definitions, serious drug offenses under 18 U.S.C. § 924(e)(2)(A)(ii) are a subset of drug trafficking crimes as defined by 18 U.S.C. § 924(c). This means that a serious drug offense is necessarily a drug trafficking crime, and a drug trafficking crime is necessarily an aggravated felony. It follows that Castillo-Martinez's § 318-B:2(I) conviction is an aggravated felony under the INA and would have precluded him from receiving various types of discretionary relief from the removal order. See United States v. Hercules, 947 F.3d 3, 8 (1st Cir. 2020) (stating that "appellant's aggravated felony convictions render him ineligible for various forms of relief from removal," including cancellation of removal, 8 U.S.C. § 1229b(a)(3), and asylum, id. § 1158(b)(2)(A)(ii), (B)(i)). Castillo-Martinez was convicted of conspiracy to sell OxyContin, but "conspiracy to commit an offense described in [8 U.S.C. § 1101(a)(43)]" is also an aggravated felony. 8 U.S.C. § 1101(a)(43)(U).

- 21 -

Martinez's other drug conviction.  See Knowles v. Mirzayance, 556 U.S. 111, 126-27 (2009).

That counsel was making a strategic choice is shown by the fact that Castillo-Martinez applied for deferral of removal under the CAT and submitted affidavits and testimony from himself and his sister in support.  Castillo-Martinez's counsel was not deficient because he elected to focus on one defense to removal rather than another defense that he reasonably perceived as weak.  This is not a case where counsel gave up "the only defense available."  Knowles, 556 U.S. at 126-27 ("Counsel also is not required to have a tactical reason . . . for recommending that a weak claim be dropped altogether.").[7]

---

[7]    There was a second strategic choice involved.  An alien previously ordered removed because of an aggravated felony conviction is not eligible to seek readmission for 20 years.  See 8 U.S.C. § 1182(a)(9)(A)(i); 8 C.F.R. § 212.2(a).  Prior to the completion of the 20-year absence, an alien may apply for a discretionary I-212 waiver, or "permission to reapply."  See 8 U.S.C. § 1182(d)(3); 8 C.F.R. §§ 212.2(a), 212.4.  Counsel could have easily concluded that Castillo-Martinez would be removed based on either drug conviction.  Had counsel objected to the marijuana conviction as the basis for the removal order or requested a stay pending the Supreme Court's decision in Moncrieffe, this would have only prolonged the removal proceedings.  Counsel did not know when the Supreme Court would issue its decision in Moncrieffe, and the government could have amended the NTA to include the Oxycontin conviction, thus prolonging the removal proceedings further.  See 8 C.F.R. § 1240.10(e).  Any delay in removal would also delay the running of Castillo-Martinez's 20-year absence requirement.

ii.

Castillo-Martinez also cannot show prejudice resulting from his immigration counsel's actions. See Muyubisnay-Cungachi, 734 F.3d at 72.

Even if Castillo-Martinez's marijuana conviction had not been classified as an aggravated felony, he has failed to show that there is a reasonable probability he would not have been removed because of that conviction. As a controlled substance offender under 8 U.S.C. § 1227(a)(2)(B)(i), he would have had to apply for and receive discretionary relief to avoid deportation. See Moncrieffe, 569 U.S. at 204 (2013) ("Escaping aggravated felony treatment does not mean escaping deportation . . . It means only avoiding mandatory removal."); United States v. Soto-Mateo, 799 F.3d 117, 123 (1st Cir. 2015) (explaining that "even if the appellant's prior convictions did not comprise aggravated felonies, he would not have been entitled as of right to remain in the United States" and holding that there is no "constitutional right to be . . . considered for . . . discretionary relief"); 8 U.S.C. § 1229b(a). Castillo-Martinez has made no argument that he would have applied for such discretionary relief, let alone has he offered any affirmative reasons why that relief would have been warranted. His drug convictions prior to the entry of his deportation order and "the relative lack of positive equities

eliminate any reasonable likelihood that he would have received a grant of relief." Luna, 436 F.3d at 323.

Castillo-Martinez also has not shown that he would not have been subject to mandatory removal because of his separate OxyContin conviction. Even if he had successfully challenged the earlier aggravated felony classification for his Massachusetts offense, the government could have freely amended the NTA to include other grounds for removal. Federal regulations say that "[a]t any time during the proceeding" the government may lodge "additional or substituted charges of inadmissibility and/or deportability and/or factual allegations." 8 C.F.R. § 1240.10(e). "[T]here is no requirement that the [government] advance every conceivable basis for deportability" in the original NTA. Magasouba v. Mukasey, 543 F.3d 13, 16 (1st Cir. 2008) (per curiam) (second alteration in original) (quoting De Faria v. INS, 13 F.3d 422, 424 (1st Cir. 1993) (per curiam)). The government is also allowed to replace all of the original charges in the NTA with new ones, see Cheung v. Holder, 678 F.3d 66, 70 n.6, 70-71 (1st Cir. 2012), and "reopen . . . deportation proceedings to consider . . . substitute charges" against an alien if the convictions underlying the original charges have been vacated, De Faria, 13 F.3d at 424.

### iii.

Castillo-Martinez fails to satisfy the distinct statutory prejudice requirement under § 1326(d)(3), which

separately requires a "showing of prejudice." Soto-Mateo, 799 F.3d at 124. "[S]uch a showing entails 'a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred.'" Id. (quoting Luna, 436 F.3d at 321).

Castillo-Martinez argues that the district court's prejudice analysis is incorrect because we must focus only on the basis for removal cited in his original NTA for his 2012 removal order. He says that because his NTA included only his marijuana conviction and specifically said it was an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), "[o]ther grounds for removal are not relevant to the instant question of prejudice."[8]

We review whether entry of the removal order was fundamentally unfair. See United States v. Martinez-Hernandez,

---

[8] In support of this argument, Castillo-Martinez cites SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), which says we are "powerless to affirm the administrative action by substituting what [we] consider[] to be a more adequate or proper basis." He also cites cases from the Ninth Circuit supporting his understanding of the prejudice analysis. See, e.g., United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006) ("[Defendant's] Notice to Appear charged him as removable only for having committed an aggravated felony . . . [because his] prior conviction did not fit that definition[, he] was removed when he should not have been and clearly suffered prejudice.").

Chenery is inapposite because we are not affirming his removal order or the basis for its entry. We are reviewing the district court's rejection of his collateral attack on the order and considering whether entry of the deportation order was fundamentally unfair. See United States v. Martinez-Hernandez, 932 F.3d 1198, 1204 (9th Cir. 2019).

932 F.3d 1198, 1204 (9th Cir. 2019). In doing so, we must consider other grounds available to the government that would also have supported entry of the removal order. We assess then the chances of Castillo-Martinez receiving relief from removal. See United States v. Almanza-Vigil, 912 F.3d 1310, 1323 n.10 (10th Cir. 2019) (explaining that 8 U.S.C. § 1326(d)(3) "prohibits us from addressing the removal order itself unless [the defendant] can establish that the order's entry was fundamentally unfair," and "the fundamental-unfairness inquiry hinges on [the defendant's] chances of receiving relief from removal"). We assess Castillo-Martinez's chances of relief from removal as a key part of the due process fundamental unfairness inquiry embodied in the statutory bar to such collateral attacks. Here, Castillo-Martinez's chances of relief from removal were nonexistent. His outstanding New Hampshire Oxycontin conviction was not a small offense. He conspired to distribute more than 15,000 OxyContin tablets for over $270,000. He was a dealer of a drug plaguing New Hampshire. It is inconceivable that the government would not have amended his removal order to add the more serious OxyContin conviction if the marijuana conviction could not serve as a basis for removal.

### 3.

We respond below in greater detail to the dissent.[9]

---

[9] We note at the outset that the government did not waive its arguments as to whether Castillo-Martinez satisfied the first

The dissent objects to our consideration that Castillo-Martinez's counsel made a strategic choice not to object and to instead apply for deferral of removal under the CAT. The dissent states that Castillo-Martinez "was not apprised at any prior point in the litigation that [this ground] was even in dispute." But it is Castillo-Martinez who bears the burden of demonstrating that his immigration counsel provided assistance so ineffective as to violate the Constitution. He has the burden as to the totality of

two statutory requirements of § 1326(d). In the district court, the government argued that Castillo-Martinez both failed to exhaust his administrative remedies and that he was not denied the opportunity for judicial review. On appeal, the government maintains the same position and argues that our circuit has not recognized an exception to the statutory exhaustion requirement and need not do so in this case. The government's brief continues with language that deliberately does not concede these arguments: "Even assuming such an exception exists, Castillo-Martinez has not established that he would be entitled to it." An "assuming arguendo" statement is not a concession and not a waiver.

Waiver is "treated as an 'intentional,' and therefore permanent, abandonment of a position." United States v. Torres-Rosario, 658 F.3d 110, 115 (1st Cir. 2011) (quoting United States v. Walker, 538 F.3d 21, 22 (1st Cir. 2008)). There was no intentional abandonment by the government here. As such, there was no waiver.

Further, even if there had been a waiver, we do not "'religiously' hold[] waiver against the Government" where the government focuses its argument on one procedural bar rather than another. Dimott, 881 F.3d at 238-40 (holding that federal courts may raise sua sponte procedural arguments not raised by the government). "[W]e have discretion to overlook waiver by the government in a criminal case when circumstances justify us in doing so." United States v. Carrasco-De-Jesús, 589 F.3d 22, 26 n.1 (1st Cir. 2009); see United States v. Borrero-Acevedo, 533 F.3d 11, 15 n.3 (1st Cir. 2008) ("This court is not bound by a party's concessions.").

his counsel's actions in the immigration proceedings.  See Muyubisnay-Cungachi, 734 F.3d at 72.  Castillo-Martinez had numerous opportunities to address this ground, including by raising the issue of ineffective assistance before the administrative agency, which he failed to do.

The dissent also misunderstands the scope of our review under 8 U.S.C. § 1326(d).  Congress did not adopt the dissent's reading of United States v. Mendoza-Lopez, 481 U.S. 828 (1987), in passing § 1326(d).  Rather, § 1326(d) makes clear that Castillo-Martinez "may not challenge the validity of the deportation order" unless he first demonstrates that "the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).  When Congress used the phrase "fundamentally unfair" in § 1326(d)(3), it meant that aliens must show that they have been denied due process under the Fifth Amendment.  See United States v. Torres, 383 F.3d 92, 103 (3d Cir. 2004) (collecting cases and noting that "[i]n measuring whether an alien's removal proceeding was 'fundamentally unfair,' most circuits ask whether the alien was denied due process").  To establish a due process violation, an alien must show both procedural error and prejudice.[10]  See Luna, 436 F.3d at 319

---

[10]    We have recognized that "[t]here may be some cases where the agency's violation of a petitioner's rights was 'so flagrant, and the difficulty of proving prejudice so great' that prejudice may be presumed."  Luna, 436 F.3d at 321 n.14 (quoting United States v. Loaisiga, 104 F.3d 484, 488 (1st Cir. 1997)).  Those circumstances would be akin to structural errors in the criminal

("[C]ourts uniformly require a showing of procedural error and prejudice" under §1326(d)(3)); cf. United States v. Marcus, 560 U.S. 258, 264-5 (2010) (explaining in the criminal context that the Court has "insisted upon a showing of individual prejudice" for a claim of non-structural error under the Due Process Clause); Strickland, 466 U.S. at 696 (stating that ineffective assistance claims under the Sixth Amendment require a showing of deficient performance and prejudice and that "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."). Interpreting § 1326(d)'s "fundamentally unfair" language to require a due process violation is consistent with Congress's goal of making it more difficult for aliens to collaterally attack their removal orders. See H.R. Rep. No. 104-22, at 16 (1995) (noting that the Criminal Alien Deportation Improvements Act "amends the INA to provide that the alien charged with [illegal reentry] may only challenge the validity of the original deportation order" if § 1326(d)'s conditions are met).

The dissent misreads the significance of the definite article "the" and in doing so, renders the two separate prejudice requirements, under the ineffective assistance standard and the § 1326(d) fundamental unfairness standard, meaningless. Under the

context. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1905 (2017) (describing a "structural error" as "an error entitling the defendant to automatic reversal without any inquiry into prejudice"). That is not this case.

dissent's approach, we would be limited to looking at the basis of the original order and not any other grounds for removal that would have supported entry of the removal order.[11] This interpretation of § 1326(d) could be satisfied by the showing of any error in the original order, thereby reading out both prejudice requirements entirely.

The dissent's prejudice conclusion also improperly focuses on the specific ground for the removal order rather than looking at the entire context of the removal proceeding. In criminal proceedings, the prejudice analysis requires that a defendant show that "[i]t must be reasonably likely that the result of the criminal proceeding would have been different if counsel had performed as the defendant asserts he should have." Rivera-

---

[11] Even if we were limited to Castillo-Martinez's original removal order, the IJ acknowledged Castillo-Martinez's Oxycontin conviction and recognized that it would serve as a basis for mandatory removal. The IJ wrote in that removal order:

> The Respondent has criminal convictions from 1996 for the Manufacture, Distribution, and Cultivation of Marijuana, for which he received a sentence of two years in a house of corrections. This is an aggravated felony, which comprises the basis for removal. In addition, more recently, the Respondent was convicted this year for a 2010 violation in Rockingham, New Hampshire, for Possession and Sale of a Narcotic Drug and the Conspiracy Thereof, for which he received again a two year suspended sentence. This, too, is a drug trafficking offense constituting an aggravated felony.

- 30 -

Rivera v. United States, 827 F.3d 184, 187 (1st Cir. 2016) (quotations omitted). "[T]hat likelihood 'must be substantial, not just conceivable.'" Hensley v. Roden, 755 F.3d 724, 736 (1st Cir. 2014) (quoting Harrington v. Richter, 562 U.S. 86, 112 (2011)). Here, Castillo-Martinez has not shown that there is a substantial likelihood that the result of the removal proceeding would have been different. The IJ in Castillo-Martinez's original removal order specifically acknowledged that the OxyContin conviction "too, is a drug trafficking offense constituting an aggravated felony." Even if Castillo-Martinez's marijuana conviction had not been classified as an aggravated felony, the result of the proceeding would have been the same -- a removal order -- even if the ground supporting the entry of that removal order may have been different.

Our holding in Williams v. United States, 858 F.3d 708, 716 (1st Cir. 2017), is instructive as to the scope of the applicable prejudice analysis. In that case, Williams was charged in New Hampshire under 18 U.S.C. § 1542 for committing passport fraud. New Hampshire was an improper venue for this charge but a proper venue for the related, uncharged offense of making a material false statement in violation of 18 U.S.C. § 1001. Williams told his counsel that he "wanted the case to be dismissed" because venue was improper. Id. at 712. Instead, his counsel consented to the government's filing of a superseding indictment

- 31 -

replacing the § 1542 charge with a charge under § 1001. Williams eventually pleaded guilty to the § 1001 charge in New Hampshire, but he argued that, but-for his counsel's concession, the government would have had to bring a new charge and he could have transferred the case to his hometown in New York instead of being forced to defend it in New Hampshire. Id. at 716. Specifically, he argued that "the initial result of the proceeding would have been different because the § 1542 charge for passport fraud would have been dismissed." Id.

In conducting the prejudice analysis, we did not focus narrowly on whether the original charge against Williams would have been dismissed (as Castillo-Martinez would have us do here). Instead, we focused more broadly on the likely result of the proceeding, holding that it "would have been no different had his counsel not agreed with the government's wish to file a superseding indictment" because he would have eventually been charged and convicted under § 1001 in either New Hampshire or New York, even if the government would have had to file new charges in a new indictment. Id. So too here: Castillo-Martinez cannot show prejudice because, regardless of whether his counsel had asked the court to delay the proceedings pending Moncrieffe, it is likely a removal order would have been entered against him.

The dissent, in several ways, is inconsistent with the congressional intent underlying § 1326(d). First, the dissent's

reading eliminates the exhaustion requirement, including the BIA's Lozada requirements. The ineffective assistance claim must first be presented to the BIA. Second, the dissent would eliminate the first prong of the BIA's judicially approved ineffective assistance standard requiring a showing of deficient performance. Third, the dissent alters the standard of judicial review from whether the BIA had substantial evidence on which to find deficient performance and instead would substitute a new standard of review in the guise of de novo review of fundamental fairness concerns. Nothing in Congress's choice to use the word "the" in any way negates or weakens the other explicit requirements in the statutory bar to such collateral attacks.

The dissent's interpretation of § 1326(d) would also multiply litigation and stress the already burdened federal immigration agencies. The dissent's rule would create a requirement that the government advance every conceivable basis for removal in the original NTA and litigate each basis in an immigration hearing, even where one ground for removal would suffice. Cf. Magasouba, 543 F.3d at 16. If not, as is the case for Castillo-Martinez, the government would have to re-notice and redo the original immigration hearing, even though no party disputes that Castillo-Martinez would likely be subject to mandatory removal again.

## III.

Affirmed.

**-Dissenting Opinion Follows-**

**BARRON, <u>Circuit Judge</u>, dissenting.**  This case concerns an order of removal entered against Jesus Leonardo Castillo-Martinez nearly a decade ago.  But, it is not about whether he may be removed pursuant to that order.  It is about the criminal consequences that he may be subjected to under 8 U.S.C. § 1326, which makes it a felony to enter unlawfully the United States "while [an] order of . . . removal is outstanding." <u>Id.</u> § 1326(a).

Castillo-Martinez contends that the indictment that charges him with that offense must be dismissed because the government may not use his prior removal order to prove the "outstanding order of removal" element of the crime that § 1326 sets forth.  He contends that the government may not do so because his counsel's assistance in the removal proceedings that produced that order was so deficient that it not only rendered them fundamentally unfair but also precluded him from subjecting them to judicial review in the first instance.  He thus seeks to dismiss his indictment based on what amounts to a Due Process-based collateral attack on the order of removal that grounds his criminal prosecution.

A criminal defendant, like Castillo-Martinez, can seek to dismiss his § 1326 charge by collaterally attacking the predicate order of removal on the ground that it resulted from fundamentally unfair administrative proceedings that also improperly prevented it from being judicially reviewed.  The

Supreme Court held as much in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), and Congress implemented that ruling in § 1326 itself, by adding subsection (d) in the wake of the Court's ruling.

That provision is entitled, "Limitation on collateral attack on underlying deportation order." 8 U.S.C. § 1326(d). It expressly provides that "[i]n a criminal proceeding under this section, an alien may not challenge the validity of the [prior] deportation order . . . unless the alien demonstrates": (1) that he "exhausted any administrative remedies that may have been available to seek relief against the order"; (2) that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review"; and (3) that "the entry of the order was fundamentally unfair." Id.; see also United States v. Palomar-Santiago, 141 S. Ct. 1615, 1620-21 (2021).

The District Court assumed that Castillo-Martinez made the requisite showings under both (d)(1) and (d)(2), and the government does not contend otherwise on appeal. Thus, to hear the parties tell it, we need decide only one issue: can Castillo-Martinez show under (d)(3) that the "entry of the order was fundamentally unfair"?

The District Court explained that he could not do so for two reasons, and they are, as it happens, the only two reasons on which the government now asks us to rely to affirm the District

Court.  The first is that Castillo-Martinez did not in fact receive ineffective assistance of counsel, because his counsel's performance in connection with his removal proceedings was not constitutionally deficient.  The second is that, even if Castillo-Martinez did receive such constitutionally deficient assistance of counsel, the "entry of the order of removal" against him was still not "fundamentally unfair" within the meaning of (d)(3).

As I will explain, neither reason holds up.  The first depends -- at least given the limited nature of the District Court's ruling -- on a troubling view of the level of performance that may be expected of counsel that I do not understand our prior precedent to require.  The second -- insofar as it truly differs from the first -- rests on both a mistaken understanding of the degree of prejudice that must be shown to establish a violation of the right to procedural due process and a construction of § 1326(d) that accords with neither its plain text nor its statutory history.

Thus, I would vacate the District Court's order denying Castillo-Martinez's motion to dismiss his indictment.  That way, the parties may hash out on remand any issues beyond those addressed by the District Court and presented to us by the government that might bear on whether the denial of the motion to dismiss the indictment is warranted.[12]

---

[12] I agree that there is no merit to Castillo-Martinez's collateral challenge to the validity of his underlying order of

Ordinarily, there would be no need for me to address any of those potential issues. But, the majority has chosen, most unusually, to reach out to resolve some of them. Accordingly, I will address briefly the problems with the (unaided) ways in which the majority has done so before then addressing the issues that concern (d)(3), which in my view are the only issues that are properly before us in this appeal. First, though, it is necessary to review the Supreme Court ruling that is the genesis for § 1326(d): Mendoza-Lopez.

**I.**

Decades ago, § 1326 provided that "[a]ny alien who -- (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be guilty of a felony . . . ." 8 U.S.C. § 1326 (1982). Criminal defendants seeking to block their prosecution for that offense sometimes brought collateral attacks on their predicate deportations to prevent their conduct (unlawful entry) from resulting in their being convicted of a felony rather than a misdemeanor. See Mendoza-Lopez, 481 U.S. at 841 n.18 (explaining that "8 U.S.C. § 1325 . . . provides that an unlawful entry into the United States constitutes a misdemeanor" and that

_____

removal insofar as it rests on the contention that, per Pereira v. Sessions, 138 S. Ct. 2105 (2018), the Immigration Judge had no jurisdiction to enter it.

"[§] 1326 serves to enhance the penalty for unlawful entry, imposing a steeper punishment on individuals who violate § 1325 and who have previously been deported").

The lower courts were divided over whether such collateral attacks could be brought, in large part because the version of the statute then in place did not contain -- as it now does -- a provision that recognized that such attacks were permissible. See id. at 833 n.6. Mendoza-Lopez helped to resolve a good deal of the confusion.

The Court explained that § 1326 did not itself make the validity, rather than the fact of the prior deportation, relevant to proving the prior-deportation element of the offense. See id. at 834-37. But, the Court held that "[i]f [§ 1326] envisions that a court may impose a criminal penalty for reentry after any deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process." Id. at 837 (emphasis in original).

The Court explained that prior precedents had established "that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." Id. at 837-38 (emphasis in original). Thus, Mendoza-Lopez derived a relatively limited --

but still consequential -- due process holding: "at the very least . . . where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of the criminal offense." Id. (emphasis added). And the Court elaborated on that holding this way: "at a minimum, the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." Id. at 838 n.15 (emphasis added).[13]

The Court then turned to the specific facts of the § 1326 cases at hand. It "accept[ed]" the rulings by the courts below "that the deportation hearing [at issue] violated due process," id. at 840, because the government had "asked this Court to assume that respondents' deportation hearing was fundamentally unfair," id. at 839. It thus observed that there remained to resolve only whether "the violation of respondents' rights that took place in this case amounted to a complete deprivation of judicial review of the [administrative] determination." Id. at 840. For, if it did,

---

[13] The Court did note that, in some cases, the provision of a collateral means of judicial review would itself be incapable of addressing the concern, because the defects in the administrative proceedings might be of a structural nature that would inherently preclude any judicial review of them from being meaningful. See Mendoza-Lopez, 481 U.S. at 839 n.17.

the Court explained, then "that [administrative] determination may not be used to enhance the penalty for an unlawful entry under § 1326." Id.

The Court pointed out that the government had conceded that there were defects in the deportation proceedings that rendered "fundamentally unfair" the entry of the deportation orders at issue. See id. The Court then explained that those defects also improperly precluded judicial review of those deportation proceedings, because the immigration judge failed adequately to apprise the § 1326 defendants in their immigration proceedings of both the option of seeking a suspension of deportation (which, if exercised, would have precluded the entry of the order of deportation that the government was using to prove the prior-deportation element of the § 1326 offense) and their appellate rights. See id. That failure, the Court found, "permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation." Id. Thus, the Court held that it followed that the federal constitutional guarantee of due process precluded the government from "rely[ing] on those orders as reliable proof of an element of a criminal offense." Id. (emphasis added).

The Court appeared to leave unresolved whether the defendant in a criminal proceeding would have to show that an

administrative order had been entered in violation of due process, rather than merely unlawfully, to establish that the right to due process barred the government from using that order in the criminal proceedings as "reliable proof" of a crime's element.[14]  But, Castillo-Martinez grounds his right to challenge the validity of his underlying order of removal in § 1326(d).  And, (d)(3), by requiring that he show that "the entry of the order was fundamentally unfair," plainly requires Castillo-Martinez to show that the entry of the order was at the very least the product of a due process violation.[15]

---

[14] Notably, Mendoza-Lopez observed that, even if a collateral judicial-review "safeguard" were in place, "the use of the result of an administrative proceeding to establish an element of a criminal offense is troubling."  Id. at 838 n.15.  In so stating, the Court conceded that it had permitted an administrative order that was, by design, not subject to direct judicial review to be used to prove an element of a criminal offense in Yakus v. United States, 321 U.S. 414 (1944), but emphasized that the criminal prosecution there was for the violation of an administrative regulation that Congress had intentionally insulated from direct judicial review due to the exigencies of wartime and, "most significantly, . . . adequate judicial review of the validity of the regulation was available in another forum" in advance of the criminal proceedings predicated on that regulation.  Mendoza-Lopez, 481 U.S. at 838 n.15.

[15] By its terms, § 1326(d) imposes a "[l]imitation on collateral attack[s]" and specifies three necessary conditions that a defendant must satisfy in order not to be barred from collaterally attacking the "underlying deportation order."  But, the parties in this case assume -- and I adopt their assumption -- that § 1326(d) also authorizes such attacks and that its three prongs, if satisfied, render a defendant's attack successful.

So, for our purposes, the following questions are the only ones that are potentially at issue. First, has Castillo-Martinez shown that, based on the ineffective assistance of counsel that he claims to have received in his 2013 removal proceedings, he was "improperly deprived . . . of judicial review" within the meaning of (d)(2)? Second, has he also shown, on that same basis, that he did all that he was expected to do to satisfy (d)(1)'s requirement to exhaust available administrative remedies? And, third, if he has shown that much, has he has shown as well -- as he must under (d)(3) -- that the "entry of the order [of removal] was fundamentally unfair"?

**II.**

There is not much that I need to say about whether Castillo-Martinez has shown what he must to satisfy the first two requirements set forth in § 1326(d). The District Court assumed that he had, and the government does not ask us to revisit that assumption. Nevertheless, the majority chooses of its own accord to hold that Castillo-Martinez's bid to dismiss his indictment fails under both (d)(1) and (d)(2). I thus begin by explaining my concern with this aspect of the majority's decision.

As an initial matter, nothing indicates that either (d)(1) or (d)(2) constrains our subject matter jurisdiction. In Mendoza-Lopez itself, moreover, the Court relied on the government's concession that the underlying immigration

proceedings were "fundamentally unfair" rather than on its own independent (and unargued for) determination of whether they were. 481 U.S. at 839-40. Thus, it seems to me that the majority is excusing the government's failure to make arguments regarding (d)(1) and (d)(2) even though the government has not itself asked us to do so.

To be clear, I am not suggesting that the government has conceded that the relevant requirements have been met merely by failing to argue otherwise to us. See Maj. Op. at 27 n.9. But, I do note that the government's opposition to Castillo-Martinez's motion to dismiss failed to address his developed contention below that he should be treated as having satisfied both (d)(1) and (d)(2) because the ineffective of assistance of counsel that he contends that he received in his removal proceedings prevented him from raising that contention in his removal proceedings and effectively rendered him unable to have the issue reviewed on appeal. Thus, the majority is necessarily relying on an independent ground for affirming the District Court that the government failed to develop any argument in support of at any point in this litigation.

I suppose such reliance would be less concerning if it were clear that Castillo Martinez had not met the two requirements at issue. But, the majority offers no explanation for how Castillo-Martinez could have successfully raised his claim of

ineffective assistance of counsel in his removal proceedings, while its only arguments in support of its conclusion that Castillo-Martinez cannot show that he exhausted his available administrative remedies directly conflict with the only relevant circuit-level authority. See United States v. Lopez-Chavez, 757 F.3d 1033, 1044 (9th Cir. 2014); United States v. Cerna, 604 F.3d 32, 40 (2d Cir. 2010); Maj. Op. at 13-14.[16] I note, moreover, that Mendoza-Lopez -- which was the catalyst for Congress's enactment of § 1326(d) -- found merit to the collateral challenge in the criminal proceeding there at issue without addressing whether any administrative collateral challenge had been pursued.

Nor does United States v. Palomar-Santiago, 141 S. Ct. 1615 (2021), provide the missing clarity. The Supreme Court did hold that the three requirements of § 1326(d) are conjunctive. Id. at 1620-21. It did not address, however, what the majority now resolves on its own -- what would suffice to demonstrate that two of them had been satisfied?

---

[16] I understand the majority's assertion that Castillo-Martinez failed to comply with (d)(1) because he failed to comply with the requirements for lodging a claim of ineffective assistance set forth by the Board of Immigration Appeals in Matter of Lozada, 19 I. & N. Dec. 637 (BIA 1988), Maj. Op. at 15-18, to depend on the majority's contention that (d)(1)'s reference to the exhaustion of remedies encompasses motions to reopen.

- 45 -

I come, then, to the question of whether Castillo-Martinez can satisfy the requirement set forth in (d)(3). He contends that he can because his counsel's assistance in his removal proceedings was so ineffective that it rendered them fundamentally unfair. He thus contends that he can successfully collaterally attack his prior order of removal, such that the government cannot now rely on that order as "reliable proof," Mendoza-Lopez, 481 U.S. at 840, of the "outstanding order of removal" element of the criminal offense that § 1326 sets forth, id. at § 1326(a).

The government does not dispute on appeal that a noncitizen may be deprived of his right to due process under the Fifth Amendment in removal proceedings in consequence of his counsel's ineffective assistance in them. Muyubisnay-Cungachi v. Holder, 734 F.3d 66, 72 (1st Cir. 2013). There is thus no dispute on appeal that the provision of ineffective assistance of counsel in removal proceedings can, at least in some circumstances, render them fundamentally unfair within the meaning of (d)(3). See Fustaguio Do Nascimento v. Mukasey, 549 F.3d 12, 17 (1st Cir. 2008) ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." (quoting Rodríguez-Lariz v. INS,

282 F.3d 1218, 1226 (9th Cir. 2002))). Accordingly, I now turn to the dispute before us, which concerns only whether Castillo-Martinez can show that he received ineffective assistance of counsel of that kind in his removal proceedings.

## A.

The District Court ruled that Castillo-Martinez has not shown that he was deprived of procedural due process because he has not shown that his counsel's performance in those proceedings was constitutionally "deficient." See Muyubisnay-Cungachi, 734 F.3d at 72. That is so, according to the District Court, even though his counsel in those proceedings conceded his removability as an "aggravated felon" under 8 U.S.C. § 1101(a)(43) based on his prior state law marijuana conviction. The District Court explained that its conclusion followed from the fact that such a concession was supported at the time by then-controlling First Circuit precedent, see Julce v. Mukasey, 530 F.3d 30, 35 (1st Cir. 2008), abrogated by Moncrieffe v. Holder, 569 U.S. 184 (2013), and the majority endorses that same conclusion, noting that it is clear under our precedent that, absent "unusual circumstances," "an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law," Powell v. United States, 430 F.3d 490, 491 (1st Cir. 2005) (quoting Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995)); Maj. Op. at 20.

But, the record shows that the circumstances in this case were "unusual." At the very moment that Castillo-Martinez's counsel was conceding that his client could lawfully be removed based on his prior marijuana conviction, the Supreme Court was poised to render a decision, in a case that had already been argued, that would make clear that he could not be. See Moncrieffe v. Holder, 566 U.S. 920 (2012) (granting the petition for writ of certiorari); Transcript of Oral Argument, Moncrieffe, 569 U.S. 184 (No. 11-702), 2012 WL 4812587 (identifying the oral argument date as October 10, 2012). Moreover, there was at that time a circuit split among five courts of appeals on the question of whether a prior conviction for distributing marijuana (which was what Castillo-Martinez's prior conviction was for) qualified as an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43), with two circuits taking the opposite view from our circuit's ruling on that question in Julce. See Moncrieffe, 569 U.S. at 190 n.3. And, what is more, there was intervening Supreme Court precedent that had already undercut Julce.[17]

_____

[17] Julce had reached the conclusion that it did by applying a circumstance-specific "'hypothetical federal felony' approach" to determine whether a state conviction qualifies as an aggravated felony under the INA. 530 F.3d at 33 (quoting Berhe v. Gonzales, 464 F.3d 74, 84 (1st Cir. 2006)). But, in the wake of that ruling, the Supreme Court had indicated -- in Nijhawan v. Holder, 557 U.S. 29 (2009) -- that we should instead be applying the categorical approach. See id. at 37 (noting that the phrase "illicit trafficking in a controlled substance" in the "aggravated felony" statute "must refer to [a] generic crime[]" and therefore

Thus, I see no merit in the only ground that the District Court has given for ruling that Castillo-Martinez fails to show that his counsel provided constitutionally deficient assistance to him: that his counsel could not be expected to anticipate the new rule of law that favored his client. Cf. Lopez-Chavez, 757 F.3d at 1043 (concluding that counsel was ineffective in conceding removability where the removal order was based on the sole ground that the defendant's state law marijuana offense was an aggravated felony because that very issue was an open question in the applicable jurisdiction at the time of the order); United States v. Castro-Taveras, 841 F.3d 34, 47 (1st Cir. 2016) (explaining that "'[d]efense counsel too must know or learn about the relevant law and evaluate its application to his or her client'" and that "failure of knowledge by counsel" as to "the 'most fundamental statutory provision relating to sentencing' . . . may 'amount to constitutionally ineffective assistance of counsel'" (alteration in original) (quoting Correale v. United States, 479 F.2d 944, 949 (1st Cir. 1973))). Accordingly, I would vacate the District Court's ruling, insofar as it is dependent on this finding of no "deficient performance." That way, the District Court may

_____

calls for the "categorical approach"); see also Moncrieffe, 569 U.S. at 192 ("The aggravated felony at issue here, 'illicit trafficking in a controlled substance,' is a 'generic crim[e].' . . . So the categorical approach applies." (quoting Nijhawan, 557 U.S. at 37)).

determine in the first instance if there is some other basis (still viable in the case) for finding that Castillo-Martinez has not shown what he must under the "deficient performance" component of his ineffective assistance of counsel claim.

I do recognize that the majority would have us bypass this conventional method of appellate adjudication, as the majority reaches out on its own to rule that Castillo-Martinez received constitutionally adequate assistance from his counsel in his immigration proceedings on a ground that the District Court did not address and that the government neither presses in this appeal nor advanced below. The majority asserts in this regard that Castillo-Martinez's counsel may reasonably be understood to have made a strategic choice not to press the Moncrieffe point.

In support of that contention, the majority asserts that Castillo-Martinez's counsel may have reasonably assessed that the Moncrieffe argument ultimately would have offered no aid to Castillo-Martinez because an order of removal could have been later entered against him either on the ground that he was an "aggravated felon" based on his 2012 OxyContin conviction in New Hampshire, see 8 U.S.C. § 1227(a)(2)(A)(iii), or on the ground that he was not entitled to be spared from removal for having unlawfully entered the country initially based on a discretionary determination predicated on his marijuana conviction. Maj. Op. at 20-22. For that reason, the majority concludes, Castillo-

Martinez's counsel acted competently in pressing only a claim under the Convention Against Torture, as that claim alone would have stood in the way of his removal on either of those alternative grounds.

But, neither the government nor the District Court has suggested that Castillo-Martinez's counsel was not constitutionally deficient in failing to advance the argument that won the day in Moncrieffe because he was in fact savvy for failing to have done so. They have asserted (unpersuasively in my view) only that he was not constitutionally deficient in failing to advance that argument because he was excusably lacking in foresight. Castillo-Martinez was not apprised at any prior point in the litigation that the competency of his counsel was being disputed on that basis. Nor have we sought supplemental briefing to see what he might have to say about it now that it is being disputed. I thus cannot agree that it is proper for us to reject Castillo-Martinez's claim of ineffective assistance of counsel on this alternative "strategic choice" ground.

**B.**

Of course, Castillo-Martinez must show more than that his counsel's performance in his removal proceedings was constitutionally deficient to succeed on his due process-based collateral attack on the removal order that grounds his prosecution under § 1326. He must also show that such poor performance

"prevented [him] from reasonably presenting his case." Fustaguio Do Nascimento, 549 F.3d at 17 (quoting Rodríguez-Lariz, 282 F.3d at 1226). The District Court and the majority each concludes that he cannot make that showing either. Here, as well, I am not persuaded.

The sole legal basis for the only order of removal that was entered against Castillo-Martinez was that he qualified as an "aggravated felon" under Sections 101 and 237 of the Immigration and Nationality Act. See 8 U.S.C. §§ 101(a)(43)(B), 1227(a)(2)(A)(iii). That order based that conclusion solely on the fact that he had been convicted of the offense of marijuana possession under Massachusetts law. Yet, as I have explained, Moncrieffe makes clear that such an order is unlawful. Thus, it would appear to me that Castillo-Martinez can show that his counsel's failure to raise the Moncrieffe-related argument did prevent him from reasonably presenting the case that it would be unlawful to order him removed on the sole ground on which his order of removal rested.

The District Court and the majority conclude, however, that Castillo-Martinez must show that no other order of removal could have been entered against him. They then conclude that he has not done so, because the record shows that he could have been ordered removed (even though he was not) at those same immigration proceedings based on either his separate OxyContin conviction or

- 52 -

a discretionary determination keyed to the marijuana conviction itself. Maj. Op. at 23-25.

The prospect that a removal order premised on either ground could have been entered (but was not) might support the conclusion that his counsel reasonably surmised that a Moncrieffe-based challenge would merely delay the inevitable. It thus might support an argument that his counsel acted strategically and so not deficiently. But, insofar as the District Court and the majority mean to make a point about the prejudice that the Fifth Amendment right to procedural due process generally demands, I cannot see why that prospect is of note.

If Castillo-Martinez had been ordered removed solely on the basis of his prior state-law marijuana conviction after Moncrieffe, and he then petitioned to have it vacated based on that ruling, we would not deny his petition for review and leave his plainly unlawful order of removal in place just because the record showed that he could have been ordered removed -- but was not -- based on his OxyContin conviction or a discretionary decision to deny him relief based on his prior marijuana conviction. Why, then, should the fact that the claimed reason for deeming the entry of the order of removal to have been unlawful is that it violated the Fifth Amendment in and of itself require us to reach a different conclusion?

Consider the case of the non-English speaking child who is ordered removed on a plainly unlawful basis in an uncounseled, untranslated proceeding. Does her due process-based challenge to the resulting removal order come up short, such that she may be removed from the country pursuant to the only order of removal actually entered against her (unlawfully entered though it was), so long as a reviewing court can scan the record and find that a different but lawful order of removal could have been entered and then asserted as the basis for her removal?

The majority contends that Williams v. United States, 858 F.3d 708, 716 (1st Cir. 2017) supports its view that prejudice under the Fifth Amendment turns not on whether orders actually entered might have been unlawful but instead on whether orders never entered might have been lawful. Maj. Op. at 32-33. But, it does not. In Williams, a criminal defendant unsuccessfully sought to have his lawful conviction on one charge overturned on the ground that his counsel's ineffective assistance prevented him from being convicted unlawfully based on a different charge. Id. at 716. I do not see how that precedent provides any support for the majority's notion that a never-entered, lawful order of removal necessarily suffices to make up for an unlawful one that was entered.

The majority also points as support for its view of Fifth Amendment prejudice to Rivera-Rivera v. United States, 827 F.3d

184 (1st Cir. 2016), which holds that prejudice under Strickland v. Washington, 466 U.S. 668 (1984), requires a showing that the "result of the criminal proceeding would have been different' if counsel had performed as the defendant asserts he should have." Rivera-Rivera, 827 F.3d at 187 (quoting Hensley v. Roden, 755 F.3d 724, 736 (1st Cir. 2014)); Maj. Op. at 31. But, nothing in Rivera-Rivera suggests that the "result" that the court had in mind was a conviction that could have been entered but was not rather than the actual conviction that was the subject of the defendant's challenge. See Rivera-Rivera, 827 F.3d at 187 (finding no prejudice where counsel's failure to move for a judgment of acquittal did not affect the outcome of the case because the motion would have failed and the conviction would have stood). For that reason, it adds nothing to point out, as the majority does, that there must be a substantial likelihood that the "result" would be different here, because Moncrieffe makes clear that the only removal order that was entered could not have been lawfully entered.

The majority, finally, suggests that, precedent aside, efficiency provides support for embracing its view of prejudice. It explains that a prejudice rule that prevents an unlawful removal order from being given effect when it is clear that a lawful order could have been entered in its stead will force the government either to restart the removal proceedings all over again for no

good reason or to load up on grounds for removal from the get go. Maj. Op. at 33-34.

But, I would have thought that such "inefficiency" is more of a feature than a bug of the attractive way in which we have chosen to organize our system of administrative adjudication. It ensures that a consequence as serious as expulsion from the country follows from an actual lawful order and not merely a hypothetical one that was never entered at all.

In any event, insofar as efficiency is our guide, the majority's approach hardly promotes it. Under its approach, must a defendant -- or a court -- in an unlawful reentry proceeding anticipate and refute every conceivable legal ground that the government could have attempted to predicate an order of removal on when seeking the removal of that individual, notwithstanding that "the order" of removal that was actually entered and that is the only one that "is outstanding" at the time of the alleged unlawful reentry is the product of constitutionally deficient legal assistance? And if not, what are the limits on either the defendant's or the court's obligation to account for those possibilities?

The more straightforward view of prejudice that grounds Castillo-Martinez's motion to dismiss his indictment ensures that such time-consuming hypothetical inquiries need not be undertaken. It directs the reviewing court to focus not on a might-have-been

world of non-existent orders but on something readily discernable -- the lawfulness of the administrative order that was in fact entered and that the government seeks to use to prove its criminal case.

## C.

The majority and the District Court do each separately also conclude that Castillo-Martinez cannot make the requisite showing of prejudice under (d)(3). Perhaps in doing so the majority and the District Court mean to assert nothing more than that, because Castillo-Martinez cannot show the requisite degree of prejudice under the Fifth Amendment, he cannot show the degree of prejudice required by this statutory provision. If so, then their contention fails for all the reasons that I have just given. But, if they mean to suggest that (d)(3) imposes a more onerous prejudice requirement than the one that the Fifth Amendment imposes of its own accord, then I cannot agree.

The use of the definite article "the" in "the entry of the order" gives little hint that there is a need to show that "the entry of any order of removal" that the immigration judge could have issued in those proceedings but did not would have been "fundamentally unfair." Indeed, the use of the phrase "the entry" further underscores that point by doubling down on the provision's use of the definite article and imposing "a temporal limitation on the . . . court's inquiry" to ensure "that § 1326(d)'s prejudice

inquiry does not extend beyond the fairness of the deportation order itself." United States v. Scott, 394 F.3d 111, 118-19 (2d Cir. 2005).

That "the order" referenced in (d)(3) would appear to be the same "order" referenced in subsection (a) reinforces the same conclusion. A hypothetical order of removal that never was cannot be "an order . . . that is outstanding" at the time the unlawful reentry occurs, id. at § 1326(a).

Nor do the words "fundamentally unfair" in (d)(3) suggest otherwise. I suppose the notion must be that those words may be read to imply that the actual order that was entered -- though itself unreliable proof of that element due to its insulation from judicial review and the unfairness of the proceedings that produced it -- may spring back into respectability whenever the record shows that some other order could have been entered to take its place. If so, I guess the further notion must be that the words "fundamentally unfair" in (d)(3) may be read to imply that the tainted and unlawful order may be used in that event to prove the crime without thereby causing any fundamental unfairness, because we can be confident that a different (though never entered) order could have taken its place.

But, to describe that notion of why reliance on the tainted (and never judicially reviewed) order of removal is not fundamentally unfair is to undermine it. The phrase itself --

"fundamentally unfair" -- is plainly included to ensure that the provision accords with Mendoza-Lopez. The due process concern that the Court identified there, however, inhered in the government's use of administrative orders as if they were "reliable proof" of an element of a criminal offense, even when those orders resulted from fundamentally unfair administrative proceedings that had never been judicially reviewed. The Court at no point suggested that such a concern would disappear just because some other more reliable means of proving that element of the criminal offense could have existed but does not.[18]

In this respect, purpose would seem to confirm what text indicates. The surest way to prevent what concerned the Court in Mendoza-Lopez from occurring in § 1326 prosecutions is to prevent the government from relying on an order entered in violation of due process -- and insulated from intended direct judicial review -- to prove an element of the unlawful reentry offense.

Finally, this easy-to-implement understanding of (d)(3) is not mine alone. See United States v. Martinez, 786 F.3d 1227,

---

[18] Nor can Mendoza-Lopez's references to structural defects that are preclusive of all judicial review be read to suggest that such defects must be shown under (d)(3)'s "fundamentally unfair" prong. In addition to the fact that nothing in Mendoza-Lopez itself suggests that defects of that type must be shown, (d)(2) independently requires a showing that the underlying administrative proceedings "improperly deprived" the § 1326 defendant of "judicial review" of "the order" entered in them and so would be superfluous if (d)(3) were so read.

1232-33, 1233 n.2 (9th Cir. 2015); Lopez-Chavez, 757 F.3d at 1043 ("[H]ad counsel presented the Seventh Circuit with the question of which rule to adopt, [the defendant's] order of removal would have been held unlawful and would not have gone into effect. Thus, [the defendant's] counsel's ineffectiveness not only may have affected, but actually did, 'affect[] the outcome of the proceedings.'" (last alteration in original) (footnote omitted) (quoting Correa-Rivera v. Holder, 706 F.3d 1128, 1133 (9th Cir. 2013))); United States v. Camacho-Lopez, 450 F.3d 928, 930 (9th Cir. 2006) ("[Defendant's] Notice to Appear charged him as removable only for having committed an aggravated felony; . . . [because his] prior conviction did not fit that definition . . . , [he] was removed when he should not have been and clearly suffered prejudice."); Scott, 394 F.3d at 118-19. But see United States v. Martinez-Hernandez, 932 F.3d 1198, 1204 (9th Cir. 2019) (holding that the erroneous classification of predicate convictions as crimes of violence under 8 U.S.C. § 1101(a)(43)(F) did not render the defendants' NTAs invalid because those convictions could have been classified instead as theft offenses under 8 U.S.C. § 1101(a)(43)(G), which also would have made the defendants removable as aggravated felons); United States v. Almanza-Vigil, 912 F.3d 1310, 1323 n.10 (10th Cir. 2019). And insofar as this Court's decision in United States v. Soto-Mateo might be read to take the opposite view, it does so only in dicta and without

considering the Ninth Circuit's alternative approach.  See 799 F.3d 117, 124 (1st Cir. 2015).

## IV.

For all these reasons, then, I am not persuaded that either the District Court or the majority has provided a sound reason for concluding that Castillo-Martinez has failed to show what he must to satisfy § 1326(d).  I thus would vacate and remand the District Court's order denying his motion to dismiss his indictment.  By following that approach, we would ensure that whatever arguments remain for denying the motion may be considered in the ordinary course and thus only after full contestation between the parties.  We also would ensure that, in deciding whether to permit this criminal prosecution to go forward, we would not be unnecessarily and unduly cabining the protections afforded by the Fifth Amendment to those facing removal and by § 1326(d) to those facing criminal prosecution for the crime of unlawful re-entry.

Accordingly, I respectfully dissent.